STATE, Respondent v. GOODALE, Appellant

(198 N.W.2d 44)

(File No. 10980.  Opinion filed May 24, 1972)

**Kean & Kean, Gene Paul Kean,** Sioux Falls, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, **George Weisensee,** State's Atty., Sioux Falls, for plaintiff and respondent.

WINANS, Judge.

The defendant, Carl Goodale, and one Gene Guyton were arrested and conjointly charged with the commission of crimes under three counts:

Count 1, burglary in the third degree;

Count 2, grand larceny; and

Count 3, possession of burglary tools.

They were given a preliminary hearing, were represented by separate counsel and were bound over to the circuit court on each count. Guyton, thereafter electing to plead guilty to the charge of burglary in the third degree, was sentenced to three and one-half years in the penitentiary. Counts 2 and 3 were dismissed as to him. Goodale elected to stand trial and the jury returned a verdict of guilty on all three counts against him. The trial of his case commenced February 9, 1971, the jury received the case for its consideration February 11, 1971 and returned its verdict three hours later. On March 16, 1971 the defendant appeared before the court for sentencing. Before being sentenced, defendant presented sworn evidence for the court to consider in passing sentence. At this same time the defendant made a motion to the court which will be hereinafter referred to and elaborated upon as it is one of the more serious assignments made the basis for defendant's appeal. After this motion and its denial, Goodale was sentenced to seven years in the state penitentiary for the crime of burglary in the third degree, five years in the penitentiary on the grand larceny charge and two years on the charge of possession of burglary tools, all of said sentences to run concurrently. The permissible sentence for burglary in the third degree is imprisonment in the state penitentiary for any term not exceeding 15 years, SDCL 22-3210; the permissible sentence for grand larceny is imprisonment in the state penitentiary not exceeding 10 years, SDCL 22-37-3; and for possession of burglary tools not exceeding five years, SDCL 22-32-17.

The defendant, by proper assignments of error, presents to this court five questions for decision. The first and third assignments in a sense present somewhat the same or similar problems and will be considered together. In his first assignment the defendant claims the court erred by not allowing the defendant's motion for a new trial upon the ground of prejudicial remarks between witnesses and the members of the jury panel. At the time of the sentencing the defendant asked for permission to address the court and addressing the court said he wished to make a motion for a mistrial "because a member for the prosecution visited with several members of the jury panel prior to the jury being selected that afternoon of the eighth, I believe it was, and

this member also did mention my case." Upon questioning by the court, defendant named Officer Ideker and his wife as having visited with a person who became the foreman of the jury. The court then inquired as to the nature of the conversation and the defendant replied,

"He said, 'I cannot understand why Mr. Goodale is requesting a jury trial. It's obvious that he's guilty.' Now, that's not verbatim; I can't recall exactly how it was, but that's similar enough.

THE COURT: And when did you first become aware of this?

THE DEFENDANT: The afternoon of the 8th, I believe it was, that the jury was selected. Might I also mention that my attorney, Mr. Rasmussen, had talked to Mr. Ideker on this matter, and he admitted that he had talked with these members of the jury. I think one was a relative of his, and Mr. Mayer, and he did admit it, and I want to also have written into the record today that I mentioned to Mr. Ideker at the time that there was a visit between them, and that he was sitting outside in the Courtroom with the jury panel as they were being selected — he and his wife."

The court denied defendant's motion whereupon Mr. Rasmussen, the attorney for defendant, made the following statement:

"In that connection, let the record show that so far as any conversations that I may have had with jurors — in the statement of Mr. Goodale's — the notation should be made that I at no time have consulted with Officer Ideker in this regard. I may have consulted with other individuals, but I at no time have discussed this particular matter with Officer Ideker. May I now proceed with a statement, Your Honor?"

He then proceeded to give reasons for leniency. Regarding this contention of defendant it is noted that by his own admission he

became aware of what he claims to have occurred on the afternoon of the 8th when the jury was selected to try the case. From that date until the date of sentencing, neither he nor his attorney informed the court of defendant's claim of any such occurrence. It is also pointed out that in one respect his attorney flatly contradicts client's statement that he, the attorney, had talked to Mr. Ideker on this matter. Officer Ideker testified on behalf of the state in the action. In State v. Roden, 1959, 216 Ore. 369, 339 P.2d 438, where a motion for a mistrial was made "on the ground that one of the chief witnesses for the State, Mrs. Fowler, was conversing with one of the jurors by the name of Rena Bush last night, she being Juror No. 10 in this case", the Court held:

> "We could well dispose of this case on the ground that the motion for a mistrial was not made promptly. It appears that the juror and a witness carried on some conversation as they left the courthouse after court adjourned for the day on March 24, 1958. This conduct was observed by defendant and his counsel. Defendant did not call the matter to the attention of the court the following morning, but without objection allowed the trial to proceed and the issue of his guilt or innocence to be submitted to the jury. It is well settled that a party who learns of the misconduct of a juror during the trial may not keep silent and take advantage of it in the event of an adverse verdict." (citations omitted)

We also quote with approval the following from Tucker v. Salem Flouring Mills Co., 13 Ore. 28, 7 P. 53:

> "A jury trial would be a miserable farce if the jurors were permitted to be tampered with in any manner whatever. Such trials should be kept entirely free from all suspicion that influences of that character had been exercised to any extent. The granting of a new trial, however, in such a case, is a matter addressed to the discretion of a trial judge, and his decision cannot be reviewed by this court unless there has been an abuse of discretion; and we cannot reasonably conclude that there was

any such abuse in this case. The circuit judge was in a much better situation than this court is, to determine the question. He understood better the circumstances under which the conversation took place in the presence of the juror, the nature of it, and its effect upon the case."

In principle, this rule of law is supported by the following cases which recognize that misconduct must be promptly called to the attention of the trial court, and when the appellant waits until either the jury retires, or the jury returns an unfavorable verdict against him, his delay either amounts to a "waiver" of the claimed error, or is such than an appellate court need not consider such claim of error: Powell v. State, 231 Ark. 737, 332 S.W.2d 483; Robinson v. State, Fla.App., 145 So.2d 561; Sundahl v. State, 154 Neb. 550, 48 N.W.2d 689; State v. Shafer, 222 Ore. 230, 351 P.2d 941; State v. Hollingsworth, 2 Ore.App. 186, 465 P.2d 490; North v. Cupp, 89 Ore. 703, 461 P.2d 271; Clinton v. Commonwealth, 204 Va. 275, 130 S.E.2d 437.

Polin v. State, 14 Neb. 540, 16 N.W. 898, 902 involved a first degree murder case and a death sentence. There it was shown that in disobedience of a court order and during trial, three of the jurors separated from the others and engaged in conversation with bystanders. Defendant's counsel knew of it, made no complaint to the court, and trial proceeded. Objection was made in motion for a new trial. The Nebraska Supreme Court held that it came too late. The Court said:

"Parties litigant, even defendants in criminal cases, must deal fairly by the court. They are not permitted to with-hold information of matters transpiring in the progress of a trial, whether prejudicial or otherwise, and thus, without objection, permit it to proceed to a conclusion, and then take advantage of them. Generally all objections not jurisdictional as to the subject of the litigation must be made at the first opportunity or they are deemed to be waived. The rule in such cases is that a party shall not be permitted without objection to take the chances of a favorable result, and then, if disappointed, for the first time complain."

This rule of law was again cited with approval by the Nebraska Supreme Court in Sundahl v. State, 154 Neb. 550, 48 N.W.2d 689, in a murder case where the death penalty was given.

██ The appellant has cited the case of State v. Brown, 84 S.D. 201, 169 N.W.2d 239, in support of his position. However, State v. Brown and this case are readily distinguishable upon their facts. In Brown the misconduct was immediately brought to the attention of the trial court and a mistrial requested. The request was denied and the alleged misconduct of the jury was again presented by motion for a new trial, supported by several affidavits. In the present case, the alleged misconduct occurred before the trial commenced and either before or while the jury was being impaneled. It was not brought to the attention of the court until over a month later, and even then was made solely on the self-serving declarations of the appellant himself, unsupported by any other corroborative or substantiating evidence, and even at that time appellant's attorney denied that part of the appellant's statement which concerned the attorney's conduct.

The court would have been well within his discretionary powers had he brought Officer Ideker before the Court and made further inquiry, but we do not believe he abused his discretion in not following this procedure. Also, the attorney for the defendant had a right to inquire of the jury panel on voir dire whether anyone had talked to them about the case, and other familiar questions touching their qualifications.

██ Appellant has assigned as error the court's denial of the defendant's motion to compel the appearance of another member of the jury panel to determine the nature and extent of any prejudicial remarks this person may have made. It appears that this motion was made by defense counsel before the jury was selected to try the case and defense counsel, in his motion and as a basis for it, referred to a case tried a week before wherein the defendant in that case was acquitted. It was represented to the court in the motion that one of the members of the jury on the prior case regretted the acquittal because she had heard the defendant in the prior case, after his acquittal, had frequented

certain bars and had bragged about the fact that the jury had acquitted him even though he had committed the offense with which he had been charged, and that this information about the prior defendant's acquittal and his conduct after such acquittal was apparently disseminated throughout the members of the jury panel, from which panel the jury in the Goodale case would be chosen. The State resisted the motion, stating they had had two criminal jury cases thus far with both juries acquitting the defendants and that it would appear they had a defense jury. The state's attorney then said he would stipulate that the juror who apparently was having some second doubts about having acquitted the defendant in the prior case, would be excused if she were called. The court denied the defense motion, stating that he would allow defense counsel extreme latitude in going into this matter in his voir dire examination of the jury, and would allow him to challenge any of the jurors, giving him the benefit of the doubt on any of his challenges. It does not appear from the record before us that the juror in question was called to serve on the Goodale jury, but it does appear that she was out at the time of the motion serving on another jury case. Also it appears from the record that defense counsel upon his voir dire examination inquired of the prospective jurors whether they had heard the prior acquitted defendant say anything or had heard of any conduct on his part after the verdict of the jury in his case and such jurors had not heard nor discussed the prior case. It further appears that defense counsel waived exercising all of his peremptory challenges. This is the background for a consideration of the assignment of error. In State v. Belt, 79 S.D. 324, 111 N.W.2d 588, this court held what is universally known that the defendant is entitled to trial by an impartial jury, "Not only should the minds of the jurors be without bias or prejudice, but they should be removed from the bias, prejudice and excitement of others." This, of course, is the ideal and is one of the reasons for the voir dire examination by defense counsel. In the present case, defense counsel apparently exercised the right of examination of the jurors and the court just as plainly was prepared to grant the defense counsel extreme latitude in going into the matter of possible prejudice. It is difficult to see what more could be done than was done, and this record on appeal does not support the proposition that the jury was in

any way prejudiced or had any bias against the defendant. If such existed, certainly none is shown. We think this specification to be entirely without merit. In State v. Moraga, 98 Ariz. 195, 403 P.2d 289, it is held that the decision of whether or not any jurors are disqualified to act as such rests in the sound discretion of the trial court based upon the evidence produced concerning such juror. Until such discretion is abused the appellate court will not disturb the ruling of the trial court.

■ The defendant also claims that his constitutional rights to equal protection of the law have been denied inasmuch as he was sentenced for a term twice as severe as the codefendant for the same crime from the same facts. It is true that his codefendant, Gene Guyton, received a 3½ year sentence to the penitentiary for the crime of burglary in the third degree and that this defendant, Goodale, received a 7 year sentence for that charge. Plea bargaining seems to be generally accepted more and more throughout the nation. While the record does not show any plea bargaining in the Guyton case it does show that he entered a plea of guilty whereupon the state's attorney dismissed the other two counts of the information and the court pronounced its sentence. The sentences imposed on Guyton and on Goodale were pronounced by different judges. See Santobello v. New York, 1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, also Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. In State v. King, 82 S.D. 514, 516, 149 N.W.2d 509, 510, this court said, "Equal protection of the law requires that the rights of every person must be governed by the same rule of law under similar circumstances and, in the administration of criminal justice, the imposition of different punishments or different degrees of punishment upon one than is imposed upon all for like offenses is a denial of such right." The foregoing quote is also set forth in State v. O'Connor, 1972, 86 S.D. 294, 194 N.W.2d 246. In State v. Williams, 1970, 84 S.D. 547, 555, 173 N.W.2d 889, 894, we said, "The sentencing judge exercises a broad discretion in determining the kind and extent of punishment to be imposed within limits fixed by statute and sentences within such limits are not reviewable on appeal." State v. Bjelkstrom, 20 S.D. 1, 104 N.W. 481; State v. McFall, 75 S.D. 630, 71 N.W.2d 299; State v. Johnson, 81 S.D. 600, 139 N.W.2d 232.

The problem we have here has been before the Supreme Court of Wisconsin, Jung v. State, 1966, 32 Wis.2d 541, 145 N.W. 2d 684. Jung was by a jury found guilty of armed robbery and of attempted murder. Two of his companions in this crime pleaded guilty and one of them, Thomas, upon his plea received a sentence of 25 years on each count, running concurrently. Venson was charged with armed robbery only and upon his plea received a sentence of 25 years. Jung who fought the case received a sentence of an indeterminate term of not more than 30 years on each conviction, the sentences to run concurrently. Jung in his appeal, as Goodale in this appeal, contended his right to equal protection of the laws under the Fourteenth Amendment was violated in his sentencing and therefore the trial court abused its discretion. The Supreme Court of Wisconsin held, among other things, as follows:

"Usually questions involving equal protection of the laws in relation to criminal punishment are in the context of statutes providing for different punishments for different classes of offenders. Rubin, Disparity and Equality of Sentences — A Constitutional Challenge, 40 F.R.D. 55, 64 (1966). In this context it has been held equal protection of the laws requires that in the administration of criminal justice no one shall be subjected for the same offense to a greater or different punishment than that to which other persons of the same class are subjected. 21 Am.Jur.2d Criminal Law, p. 545, sec. 582. However, this does not mean that persons convicted of the same crime cannot be given different sentences depending upon their individual culpability and need for rehabilitation. Rubin, The Law of Criminal Correction, ch. 4, p. 115, sec.4."

We have quoted from State v. King, supra, which presented a question involving equal protection of the laws in the context of statutes "providing for different punishments for different classes of offenders", and because of this we believe the quote expresses the law with reference to that point, but we do not believe that such holding means "that persons convicted of the same crime cannot be given different sentences depending upon their individual culpability and need for rehabilitation." The Wisconsin case in Jung, supra, further holds:

"Disparity in sentencing standing alone does not violate due process, nor has it been a basis up to now for relief on other grounds in the federal courts or in this court. Simpson v. United States (7th Cir.1965), 342 F.2d 643; United States v. DeMarie (7th Cir.1958), 261 F.2d 477. Although the disparity in the sentences is great, we do not find that the reason therefor is because Jung insisted on his right to a trial by jury. In this respect this case is unlike **Tuttle** where the record showed the insistence upon a jury trial was partly the reason for an increased sentence over that which would have been received on a plea of guilty. We do not agree with Jung's argument that because the sentence which followed the plea of guilty of Thomas and Venson is less severe than the sentence given him following his trial and conviction his sentence was necessarily caused by his insistence upon his constitutional right to a trial by jury. This is a **post hoc ergo propter hoc** argument.

Equality of treatment under the Fourteenth amendment in respect to sentencing does not destroy the individualization of sentencing to fit the individual. It requires substantially the same sentence for persons having substantially the same case histories. We find neither error in the disparity of the sentence based upon a denial of a constitutional right nor abuse of discretion based upon the severity of the sentence."

In our case as in Jung, the defendant Goodale drove the getaway car, in fact was the owner. He was guilty of three criminal offenses when he appeared before the judge for sentencing.

█ In a further assignment of error the defendant claims the court erred in failing to grant defendant's motion for inspection of police records. The motion made in this regard was somewhat similar to the general run of motions made where defense counsel desires to compel production and permit inspection of evidence in the possession or under the control of the state's attorney. In this case about the only thing the court didn't allow for inspection

or compel its production was what the court referred to as the "work product of the police department." In this connection this court has held:

> "In furtherance of justice a trial court has inherent power on behalf of an accused in a criminal proceeding to compel production and to permit inspection of evidence in the possession or under the control of the States Attorney. State ex rel. Wagner v. Circuit Court of Minnehaha County, 60 S.D. 115, 244 N.W. 100. An accused's application for inspection or disclosure is a matter addressed to the sound discretion of the trial court which may be granted as an aid to the ascertainment of the truth or as a matter of fundamental fairness. A general hunting or fishing license should ordinarily not be granted and the time, place, and manner of making the inspection permitted or discovery allowed should be specified. It should ordinarily be confined to relevant, tangible or written evidential matters and should be denied whenever (1) there is danger or likelihood of witnesses being coerced, intimidated, or bribed; (2) the State may be unduly hampered in its investigation, preparation, and trial of defendant's case or of other related criminal cases; or (3) other evil or danger to the public interest may result from inspection or disclosure." State v. Wade, 1968, 83 S.D. 337, 159 N.W.2d 396.

An examination of the discovery which the court permitted the defendant to have leads us to the conclusion that there was no abuse of discretion in the present case and that full and complete discovery was permitted and complied with. We do not find the court to be in error in not requiring the police records which it called "work product".

The last assignment of error concerns the failure of the court to give defendant's requested instruction No. 13 as to a lesser included offense of third degree burglary. The instruction which the court refused to give is as follows:

"Included within the crime of burglary in the third degree and constituting an offense of lesser grade is breaking and entering, under circumstances which do not amount to a burglary as fully defined in the previous instructions. If you find that the defendant in this case broke or entered this building under circumstances which did not amount to burglary in the third degree, then you should bring in the lesser offense of breaking and entering."

The defendant was charged under SDCL 22-32-9, which is a felony. The requested instruction is under SDCL 22-32-16 and is a misdemeanor. This court has recently stated its position that the misdemeanor offense is not an included offense of third degree burglary defined in SDCL 22-32-9. State v. O'Connor, 86 S.D. 294, 194 N.W.2d 246. This disposes of defendant's contention.

The Judgment is affirmed.

All the Judges concur.