THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD LA FIURA, Defendant-Appellant.

First District (2nd Division)    No. 79-1694

Opinion filed March 3, 1981.—Rehearing denied March 31, 1981.

Marvin Bloom, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Barry A. Gross, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Leonard La Fiura, was indicted for the offenses of armed robbery and aggravated battery. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—2, 12—4.) After his first trial was declared a mistrial, defendant was retried and found by a jury to be guilty of armed robbery. The trial court

sentenced defendant to a 20-year term. On appeal defendant asks this court to consider (1) whether the trial court erred in permitting testimony regarding a post-indictment admission by defendant made in the absence of his attorney, (2) whether that admission is inadmissible because it arose during plea negotiations, (3) whether the court's refusal to permit certain character witnesses to testify was error, and (4) whether defendant's sentence is excessive.

On January 17, 1976, at approximately 4 a.m., Frank Retzler was working alone at a gas station. According to testimony at trial, defendant entered the business office, pulled a switchblade knife from his clothing, and told Retzler that defendant intended to rob him. Retzler resisted and defendant cut Retzler's hand. Defendant then threatened Retzler, forced him into another room, and completed the theft of cash receipts and Retzler's wallet.

Police Officer Thomas Cronin testified that he arrested defendant on March 30, 1976, and charged him with the offenses arising out of the robbery. Cronin further testified that on April 7, he and a partner were assigned to a surveillance detail at a 24-hour convenience store in anticipation of a robbery unconnected with this case. At about 10 p.m., defendant, who was free on bond, entered the store. Cronin greeted defendant. After defendant selected items for purchase, he engaged in conversation with Cronin. According to Cronin, defendant initiated this conversation by asking why the officer took his job so personally. Defendant then asked Cronin why he bothered defendant's parents when defendant's whereabouts were unknown to police. After Cronin responded, defendant asked the officer why the police charged him with aggravated battery. Cronin told defendant he had cut the victim's hand. Finally, defendant stated he "would plead guilty to the robbery but not the aggravated battery because he had never had any violence on his record." Defendant then paid for his purchases and left the store.

Defendant testified at trial that he did not make the statements attributed to him by Cronin. He also denied the commission of the offenses charged.

## I.

Defendant initially contends the statement attributed to him should have been suppressed pursuant to his motion because *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, held such testimony was violative of the constitutional guarantee to effective assistance of counsel. The defendant in *Massiah* had been indicted for violation of Federal drug laws when Federal agents, working with a codefendant, acquired defendant's admissions of guilt through the use of electronic devices. A recording of those admissions was introduced at

trial. Defendant's conviction was reversed by the Supreme Court which concluded his constitutional rights were violated when evidence of his admissions was "deliberately elicited from him after he had been indicted and in the absence of his counsel." (377 U.S. 201, 206, 12 L. Ed. 2d 246, 249, 84 S. Ct. 1199, 1201.) The instant record, however, is without evidence of deliberate elicitation.

The evidence here discloses a spontaneous and voluntary communication initiated by defendant. Cronin and his partner were assigned to the store for purposes independent of defendant's case. Defendant does not allege coercion or trickery. According to Cronin, defendant initiated the exchange. Defendant, although previously indicted, was free to make his purchases and leave the store at any time. Defendant's inculpatory statement was made in the absence of counsel, but absent deliberate elicitation that statement is admissible. (*People v. Georgev* (1967), 38 Ill. 2d 165, 176-77, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202; *People v. Gomez* (1980), 80 Ill. App. 3d 708, 714, 399 N.E.2d 1368, *appeal denied* (1980), 81 Ill. 2d 585; but *cf. People v. Halstrom* (1966), 34 Ill. 2d 20, 22, 213 N.E.2d 498 (statement inadmissible where defendant incarcerated at time of utterance); *People v. Lagardo* (1968), 39 Ill. 2d 614, 616, 237 N.E.2d 484 (inadmissible where defendant questioned by three police officers while incarcerated).)[1] Accordingly, the trial court's admission of defendant's statement into evidence was not violative of defendant's right to counsel.

II.

Defendant next contends his inculpatory statement is inadmissible because it was uttered during plea negotiations. Supreme Court Rule 402(f) provides:

"If a plea discussion does not result in a plea of guilty, * * * neither the plea discussion nor any resulting * * * plea, * * * shall be admissible against the defendant * * *." (58 Ill. 2d R. 402(f).)

Thus, the threshold question is whether defendant's statement was made in the course of or related to a plea discussion.

The Illinois Supreme Court addressed this question in *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229, where the court adopted a two-prong analysis. A statement is plea related and thus inadmissible if the accused exhibited a subjective expectation to negotiate a plea and that

---

[1] Defendant points to language in *People v. Lagardo* which indicates a blanket bar to admission of such statements where given after indictment and without counsel. The statement there, however, was "the direct product of the post-indictment questioning." (39 Ill. 2d 614, 616.) Here, there was no custody and no questioning. Accordingly, the present circumstances are distinguishable from those in *Lagardo*. See also *People v. Milani* (1968), 39 Ill. 2d 22, 26, 233 N.E.2d 398, *cert. denied* (1968), 393 U.S. 865, 21 L. Ed. 2d 134, 89 S. Ct. 148.

expectation was reasonable under the totality of the objective circumstances. (79 Ill. 2d 341, 351.) Furthermore, "[w]here a defendant's subjective expectations are not explicit, the objective circumstances surrounding defendant's statement take precedence in evaluating defendant's subsequent claim that the statement was plea related." 79 Ill. 2d 341, 353.

The instant facts indicate defendant's statement was not plea related. According to trial testimony, the statement was made in the absence of any explicit expectation by defendant. Defendant initiated the communication. He asked questions of Cronin unrelated to a plea discussion. Then he spontaneously declared he would plead guilty to armed robbery but not to aggravated battery. He never waited for a response from Cronin, and Cronin never offered one. Under these facts it is incredible that defendant could have considered the statement as plea related at the time it was made. But even if he did, such an expectation is totally unreasonable under the circumstances. "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." (79 Ill. 2d 341, 353.) The instant record discloses the subject discussion contained no rudiments necessary to the negotiation process. The attempt to elevate this to negotiation borders on the ludicrous. Accordingly, Rule 402(f) does not bar testimony regarding it. The trial court did not err when it permitted Cronin to so testify.

### III.

Defendant also complains that the trial court erred when it refused to permit testimony by six reputation witnesses.

### A.

Defendant proffered his answer to the State's motion for discovery approximately two years prior to his first trial, which began September 13, 1979. On the day before trial defendant moved to amend his answer to include six witnesses. After the State objected, the trial court ruled defendant could produce testimony from one witness on his list of six, but the others would be barred from testifying due to noncompliance with discovery provisions. (See generally 58 Ill. 2d R. 413(d)(i), 415(g)(i).) Subsequent to declaration of mistrial in the first proceeding, defendant moved to produce the five witnesses for the second trial. The trial court refused defendant's motion as untimely.

Failure to comply with discovery provisions requiring mandatory disclosure of information regarding potential witnesses can result in exclusion of their testimony. (58 Ill. 2d R. 415(g)(i).) The decision to exclude that testimony rests within the sound discretion of the trial court,

"whose discretion will only be reviewed upon a party's showing of prejudice. [Citation.]" (*People v. Brown* (1976), 41 Ill. App. 3d 641, 649, 354 N.E.2d 602, *appeal denied* (1976), 64 Ill. 2d 597.) Under these circumstances we believe the trial court should have permitted the witnesses to testify at the second trial. However, we are satisfied the evidence at trial proved defendant guilty beyond a reasonable doubt. No prejudice has been shown.

## B.

Defendant next contends he was denied the constitutional right to present a witness in his defense (see, *e.g.*, *Washington v. Texas* (1967), 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 87 S. Ct. 1920) when the trial court excluded testimony to be offered by Joy Dawson. At trial, defense counsel moved to allow Dawson's expected testimony regarding defendant's community reputation. Dawson's testimony during the first trial disclosed her knowledge of defendant was gained exclusively through their mutual association with the Safer Foundation, a counseling organization for prior offenders. Dawson served as director of the foundation during the time period defendant worked there. The trial court ruled her testimony would be incompetent and excluded it from the second trial.

■■ A trial court's ruling regarding competency to testify as a reputation witness is a determination that will not be disturbed absent an abuse of discretion. (*People v. Bingham* (1979), 75 Ill. App. 3d 418, 427, 394 N.E.2d 430.) "Community reputation testimony about a person *must* be based upon a witness' knowledge through association and contact with the person's friends and neighbors." (Emphasis added.) (*People v. Bingham*; *People v. Smalley* (1973), 10 Ill. App. 3d 416, 424, 294 N.E.2d 305, *appeal denied* (1973), 54 Ill. 2d 595.) Absent such knowledge a witness is not competent to give reputation testimony.

■■ On appeal, defendant also raises the argument for the first time that Dawson should have been permitted to testify regarding defendant's "previous good character." It is true a defendant in a criminal case can adduce "proof of such previous good character as is inconsistent with the commission of the crime with which he is charged." (*People v. Lewis* (1962), 25 Ill. 2d 442, 445, 185 N.E.2d 254; *People v. Wells* (1967), 80 Ill. App. 2d 187, 194, 224 N.E.2d 288.) This proof, however, is "made by showing his *general reputation* for the specific trait of character involved * * *." (Emphasis added.) (*People v. Lewis*.) Dawson's testimony at trial could go no further than her knowledge of defendant's business or work reputation. That would be insufficient. Moreover, defendant testified at trial that he began volunteer work at Safer Foundation in 1977. The instant offense was committed in early 1976. Therefore, *previous* good character evidence could not be adduced from Dawson's testimony. This

conclusion is equally applicable to the anticipated testimony by the five other co-employee witnesses. We do not believe the trial court committed an abuse of discretion when it barred such testimony here.

## IV.

Finally, defendant challenges his sentence as one which reflects punishment for his exercise of the right to a jury trial, especially in the light of his alleged rehabilitative potential. Defendant contends the trial court expressed its intent to punish him for his election to proceed by jury trial when it stated during the sentencing hearing:

"The court considered all requests that were made by his friends with reference to leniency on the sentence I am to impose upon him but the nature of the crime is such that the court feels I gave this defendant sufficient opportunity to resolve the problem before the court. The defendant chose not to accept the recommendation of this court. * * * [T]his is a violent crime where bodily harm was inflicted on an individual citizen. Not only that fact, also the fact this is a repeated offense whereby this man had prior convictions and prior scrapes with the law."

Defendant was then sentenced to a 20-year term.

■█ The offense of armed robbery carries a sentence upon conviction of "not less than 6 years and not more than 30 years." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3).) We are mindful that the exercise of a constitutional right cannot be encumbered with the threat or actuality of a more severe sentence upon conviction. (*People v. Moriarty* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688; see also *United States v. Wiley* (7th Cir. 1960), 278 F.2d 500, 504.) Where the record supports the term imposed, however, Illinois courts have refused to vacate a sentence similarly challenged. (See, *e.g.*, *People v. Hopkins* (1963), 29 Ill. 2d 260, 267, 194 N.E.2d 213; *People v. Capon* (1961), 23 Ill. 2d 254, 257, 178 N.E.2d 296, *cert. denied* (1962), 369 U.S. 878, 8 L. Ed. 2d 280, 82 S. Ct. 1151.) The instant statement is ambiguous. Resort to other portions of the record is unavailing. Notwithstanding defendant's contention here, defendant was sentenced to a term 10 years less than the maximum provided by statute. He had an extensive record of prior convictions.

■█ Defendant claims that sentence should be reduced or remanded because it is excessive in the light of his potential for rehabilitation. Since defendant's arrest for the instant offense he has developed an increasingly responsible relationship with the Safer Foundation. At the sentencing hearing employees of that organization testified that defendant has evolved into a beneficial and hard-working employee. Argument by defense counsel highlighted this recent law-abiding profile. The trial court indicated its appreciation of these facts. In imposing sentence,

however, the court stressed the violent nature of the crime and defendant's prior record. These factors support the term imposed, and we conclude the trial court's sentencing determination does not constitute an abuse of discretion. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 152-53, 368 N.E.2d 882.

In accordance with the above stated reasons we affirm defendant's conviction and sentence.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.