**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Larry H. BRAUN, Defendant and Appellant.**

**No. 14260.**

Supreme Court of South Dakota.

Considered on Briefs February 16, 1984.

Decided July 11, 1984.

Richard H. Wendt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Drew C. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment of conviction and sentence for driving while under the influence of alcohol. We affirm.

On the evening of February 4, 1983, a Redfield, South Dakota, city policeman observed appellant Larry H. Braun back his vehicle across a city street and apparently hit another vehicle. The officer stopped appellant, who was coming from a bar, and questioned him about the alleged accident. During the conversation the officer noticed a strong odor of alcohol coming from appellant. The officer then had appellant perform some sobriety tests, which appellant failed. The officer also noticed that appellant swayed and grabbed the vehicle for balance.

The officer arrested appellant for DWI and took him to the Spink County Sheriff's Office. Three other officers who came in contact with appellant that evening testified that appellant's speech was slurred, his eyes were dilated and bloodshot, and he smelled of alcohol; they all agreed that he was drunk at the time. Appellant, who refused to take a blood test, testified that he did not believe he was intoxicated that evening.

An information was filed on March 18, 1983, charging appellant with driving while under the influence of alcohol. Appellant pleaded not guilty and requested a jury trial. Following a one-day trial, appellant was found guilty. The trial judge imposed a fine of $300.00, liquidated costs of $12.00, and other costs of $286.53; he also sentenced appellant to sixty days in jail, with forty days suspended upon compliance with certain terms, and he revoked appellant's driving privileges for forty-five days.

Appellant raises two issues on appeal. His first contention is that there was

insufficient evidence produced at trial to support his conviction. It is well settled that in determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict. *State v. Jorgensen,* 333 N.W.2d 725 (S.D.1983); *State v. Moeller,* 298 N.W.2d 93 (S.D.1980).

 The record in this case is replete with competent, direct evidence of appellant's guilt. Of particular importance is the testimony of four different law enforcement officers as to appellant's condition on that evening. Therefore, we find appellant's claim to be without merit.

Appellant's second contention is that the trial judge abused his discretion when sentencing appellant, and in doing so, violated appellant's constitutional and statutory rights. Specifically, appellant complains that his sentence is more severe than the sentence given to other first-time DWI offenders. He believes the sentence was issued to punish him for exercising his rights to refuse a chemical test and to have a jury trial, and for allegedly committing perjury at trial.

 Appellant's contention fails for the following reasons: First, a trial judge has broad discretion to fix a sentence within the limits outlined by statute. A sentence which is within the statutory limits is not reviewable on appeal unless it is so offensive as to shock the conscience. *State v. Antelope,* 304 N.W.2d 115 (S.D.1981); *State v. Curtis,* 298 N.W.2d 807 (S.D.1980); *State v. Padgett,* 291 N.W.2d 796 (S.D. 1980). The sentence given here fails to shock the conscience of the court. Second, there is no evidence in the record to indicate that the sentence was given to punish appellant for exercising his rights. The sentencing judge simply gave no reasons for the specific sentence which appellant received. Furthermore, as to the allega-

tion of punishment for possible perjury, we have specifically held that a court can consider its belief that a defendant lied at trial when sentencing the defendant. *State v. Carsten,* 264 N.W.2d 707 (S.D.1978). This factor may be considered by the sentencing judge in addition to numerous other factors. *See State v. Conger,* 268 N.W.2d 800 (S.D.1978).

The judgment of conviction and sentence are affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

WOLLMAN, J., concurs specially.

HENDERSON, J., dissents.

WOLLMAN, Justice (concurring specially).

I write specially only to emphasize the fact that the state's attorney specifically disavowed any claim that appellant should be punished for having exercised his constitutional right to a jury trial.

Following the state's attorney's opening statement at the sentencing hearing, appellant's counsel responded in part by saying,

I've never heard of some defendant being punished because he takes his case to trial and I think that's what Mr. Battey is trying to do in this case.

In rebuttal, the state's attorney replied:

[L]est there be any misunderstanding, the State is not attempting to make the recommendation that it's made in any way to punish the defendant for having gone to trial. The statement of counsel misses the whole point of the recommendation.

The state's attorney then went on to make the remainder of the statements quoted in the dissenting opinion herein.

It strikes me that if on the one hand we are going to say that the trial court followed the state's attorney's recommendation regarding the length of the sentence, then we must also credit the trial court with accepting the state's attorney's disavowal of any intention that appellant

should be punished for exercising his constitutional right to a jury trial.

In *State v. Carsten*, 264 N.W.2d 707 (S.D.1978), we held that a trial court may properly take into consideration in imposing sentence its belief that the defendant testified untruthfully at trial. In reaching a similar result, the United States Supreme Court stated, "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582, 590 (1978).

In responding to the defendant's argument that the Court should fashion an exclusionary rule prohibiting trial courts from taking into account a defendant's perjury in the sentencing process in order to preclude trial courts from using a defendant's perjury for the impermissible purpose of punishing him for that perjury, the United States Supreme Court replied:

No rule of law, even one garbed in constitutional terms, can prevent improper use of firsthand observations of perjury. The integrity of the judges, and their fidelity to their oaths of office, necessarily provide the only, and in our view adequate, assurance against that.

*Grayson, supra*, 438 U.S. at 54, 98 S.Ct. at 2617, 57 L.Ed.2d at 592. I would apply the same analysis to the case before us. As the majority opinion points out, there is no evidence in the record to indicate that the trial court imposed the sentence it did to punish appellant for exercising his constitutional rights. Rather than to indulge in a presumption that our trial courts take into account impermissible considerations when imposing sentences, I would credit our trial judges with integrity and with fidelity to their oaths of office.

I have no doubt but that this court would quickly set aside a sentence imposed in violation of the principle that no defendant should be punished for exercising his constitutional rights, including the right to trial by jury, if the record should establish such a claim. This is not such a case, however, and we should not attempt to read the record in such a way as to cast the case in such a posture.

HENDERSON, Justice (dissenting).

Emblazoned on the edifice of this Nation's temple of justice, known as the United States Supreme Court, are these words: "Equal Justice Under Law." This structure is as imposing as the men who have served in it, since the founding of our country, and this phrase is the spirit of all law under our way of life. Upon that phrase, I moor this dissent. Appellant is not claiming cruel and unusual punishment. Nor is he claiming that the sentence shocks the conscience of this Court. He maintains, most forcefully, that the law has not been equally applied to him. The record supports his contention.

"Equal protection of the law requires that the rights of every person must be governed by the same rule of law under similar circumstances and, in the administration of criminal justice, the imposition of different punishments or different degrees of punishment upon one than is imposed upon all for like offenses is a denial of such right."

*State v. Goodale*, 86 S.D. 458, 466, 198 N.W.2d 44, 48–49 (1972). Appellant was, through the advocacy of the State's Attorney of Spink County, punished differently than other first D.W.I. offenders because he exercised his constitutional right to a jury trial and refused a blood-alcohol test. Everyone is entitled to a jury trial, notwithstanding the appearance of guilt—it is the backbone of our entire judicial criminal system. Every man, woman, and child has the right to put the state on its proof. A jury trial is one of the few exceptions in American jurisprudence where we, in the law, still permit the ordinary citizen to participate in our branch of government. I despise the inroads upon, and abolition of jury trials, as I perceive it, which grow like a cancer and spread across this Nation, and

I must write against it.[1] The exercise of a constitutional right cannot be encumbered with the threat or actuality of a more severe sentence upon conviction. *People v. LaFiura*, 49 Ill.Dec. 404, 93 Ill.App.3d 1099, 418 N.E.2d 48 (1981). Whether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed. *Hess v. United States*, 496 F.2d 936 (8th Cir.1974); *United States v. Marzette*, 485 F.2d 207 (8th Cir.1973); *United States v. Stockwell*, 472 F.2d 1186 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Hopkins*, 150 U.S.App.D.C. 307, 464 F.2d 816, 822 (1972); *Scott v. United States*, 136 U.S.App.D.C. 377, 419 F.2d 264, 269–74 (1969); *Baker v. United States*, 412 F.2d 1069, 1073 (5th Cir.1969), *cert. denied*, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); *United States v. Wiley*, 278 F.2d 500, 504 (7th Cir.1960). *See also, State v. Mollberg*, 310 Minn. 376, 246 N.W.2d 463 (1976); *Drinkwater v. State*, 73 Wis.2d 674, 245 N.W.2d 664 (1976). It is unthinkable in the eyes of the law, as these jurisdictions hold, to punish a man for requesting a jury trial, which is exactly what this circuit court judge did, based upon the strong advocacy of the Spink County State's Attorney. Furthermore, the trial judge cannot impose a sanction for refusing to take a chemical test different than that prescribed by the legislature. *See* SDCL 32–23–11. A license revocation is the procedural sanction, not a jail sentence.

I distinguish this situation from others, such as that in *Clark v. State*, 294 N.W.2d 916 (S.D.1980), where an equal protection argument based on disparity of sentencing was denied. In *Clark*, the record was devoid of any indication that past records, demeanor, degree of criminal involvement, etc., were sufficiently similar so as to cause the sentence disparity to be unjust. Here, five individuals were sentenced on identical D.W.I. charges on May 17, 1983. Four, upon pleas of guilty, received sentences of two to three days in jail and fines of $200.00 to $250.00. Appellant, the only one of these five who pleaded not guilty, was assessed a fine of $300.00, costs totaling $298.53, sixty days in jail (forty days suspended upon certain conditions), and had his driver's license revoked for forty-five days.

The sentencing judge in this case established a standard sentence for all first-time D.W.I. offenders, which was two to three days in jail. By motion made and order entered, all first-offense D.W.I. convictions before this circuit judge from January 1, 1983, through May 17, 1983, were made a part of this record. Only one other defendant had as severe a penalty as appellant. Said defendant had a criminal record and an extensive driving offense record. Appellant had a clean record, was married, had children, and was permanently employed. But, appellant was punished with a twenty-day jail sentence for having the audacity to request his constitutional right. Thus, he has been denied "equal protection" under the law.[2]

At appellant's sentencing, the trial judge was silent as to the type of factors which motivated the obviously greater sentence imposed upon appellant. The majority opinion apparently takes comfort in this. I do not. Given the disparity in the sentencing, and the action of the trial judge, which speaks more fervently than his sentencing quiescence, this case falls within the purview of *State v. Nichols*, 247 N.W.2d 249 (Iowa 1976) and *Hess*, 496 F.2d 936. It would be a painless remedy, as set forth in *Hess*, to remand the case for resentencing

---

1. For a litany of dissents authored by this dissenter to decisions of this Court pertaining to the right of a jury trial and the attendant rights springing therefrom, see *State v. Auen,* 342 N.W.2d 236, 241 (S.D.1984), and *Brush v. Klauck,* 347 N.W.2d 165 (S.D.1984).

2. The special concurrence, employed as a tool to traduce this dissent, fails to recognize the rule that the exercise of a constitutional right cannot be encumbered with the actuality of a more severe sentence upon conviction. Appellant received, no one can dispute, a different and more severe punishment for taking his case before a jury.

so that the trial judge can "be afforded an opportunity to fully examine his sentencing procedure and to consider the factors which motivated the sentences imposed," *Hess,* 496 F.2d at 938. Thus, I would not reverse this case, but would remand it so that the trial judge could objectively evaluate all pertinent circumstances (or improper considerations) which influenced his sentence. If the trial judge decides that he was influenced by improper considerations, he should accordingly set aside the sentence and resentence. Conversely, should he conclude that he did not penalize appellant for his insistence on his constitutional right to a jury trial, he should so find and enter an order thereupon.[3]

When the trial judge is silent as to the reasons for sentencing, one can only review the record to perceive the background—to set the stage, if you will—for the sentence. Here, immediately before the sentencing, the State's Attorney made an allegation that defendant twice falsely testified at trial. He further alluded to the fact that appellant had refused a blood-alcohol test. Pointedly, because of these allegations, the State's Attorney requested a thirty-day jail sentence. He advocated:

> In this case, unlike the cases of four people who appeared here this morning, in this case the defendant was first offered a right which he exercised, to refuse a blood test. He did that. He exercised his right and he suffered the consequences administratively for that but that refusal *although done under a claim of right, still evidences the difference between his conduct and the conduct of the four people who were given blood tests* who appeared this morning voluntarily taking a blood test. (Emphasis supplied mine.)

Clearly, the prosecutor was asking the court to extract a price (beyond the price that statutorily must be paid by way of administrative edict) for refusing the blood-alcohol test.[4] Our state legislature has adopted sanctions under SDCL 32–23–10, the implied consent law. A sentencing court should not impose additional sanctions when a defendant simply exercises his right to a jury trial. For a trial judge to consider such remarks, is an impermissible consideration.

Again, to enhance punishment against this appellant, the prosecutor told the judge:

> The State is considering the possibility of requesting the Court to look at that testimony through the eyes of a Grand Jury but has concluded, I guess, at this point, that no further process will be eminating [sic] from that testimony.

This was a prosecutorial thrust for enhanced punishment followed by quick withdrawal. Appellant was defenseless against such a remark. Again, at a later time in the sentencing process, the prosecutor stated (last words to the judge before appellant was sentenced):

> Now, secondly, the defendant need not have taken the stand in this case. He had an absolute constitutional right to remain silent. In fact, that is, as the Court knows, basic law and would not have been commented upon. He chose voluntarily to defend the case by going on the stand and taking an oath and swearing under oath. *That in and of itself changes the complexity or the context of the defendant's rights* and he chose to waive that right and once he takes the stand as a defendant, the State anticipates that he will speak truthfully about his defense. The Court heard the case. The Court knows the areas of the

**3.** In a comfortable office with modern-day equipment, this should not be difficult to do. A right to a trial by jury was forged in the fires of Lexington and Concord.

**4.** The prosecutor never urged the court for a sentence to jail because of an accident. I have scoured the trial transcript and testimony of the arresting officer which reveals that at first, he

"felt" there was an accident. However, he later testified that there was, in fact, no collision at all. The officer testified that he stopped defendant because he thought defendant was involved in an accident and wanted to get information. The arresting officer was simply mistaken about an accident having transpired. It was dark.

State's concern and we are not trying— I'm not trying a perjury case this morning but all of those things the Court is entitled to take into consideration in determining what type of sentence and character of sentence should be given in this case and it's upon those grounds that the State feels firm about its recommendation. (Emphasis supplied mine.)

Indeed, the trial judge made no commitment one way or the other towards this advocacy.[5] The holding in *Hess* would require that the judge have a bona fide belief that the defendant committed perjury during the trial before he could consider perjury in his sentencing process. *Carsten*, 264 N.W.2d 707, should not be applied, for the sentencing transcript is devoid of any statements or beliefs of the trial judge that appellant committed perjury. In *Grayson*, cited in the special concurrence, the trial judge, at sentencing, expressed that the defendant had fabricated a defense. Whereas, in this case, there was no such expression. I remind all that the only difference from the first four cases and appellant's case was that appellant exercised his right to a trial by jury and also his right to refuse to submit to a blood test. Any lawyer who has ever been in the pit knows why the prosecutor addressed these remarks to the judge. He was obviously trying to influence the judge to come down hard on this defendant, to punish him for not falling in line like the other defendants who pleaded guilty. He got the job done. This does not discount appellant's right to appeal and, under the overwhelming weight of reasoned law in this Nation, there is a presumption that the trial judge took into account these "impermissible considerations."[6] *See State v. Nichols*, 247 N.W.2d 249, which, under these circumstances, would demand a remand of this case for resentencing. Were this not so, the inscription above the United States Supreme Court Building would have a hollow ring. How precious is the right to a jury trial for it was purchased in blood by the patriots of the American Revolution and maintained throughout the history of this Republic by the men and women who have borne the brunt of battle to keep it alive. An apropos thought by Samuel Adams, an early patriot, were these words: "Let us contemplate our forefathers, and posterity, and resolve to maintain the rights bequeathed to us from the former for the sake of the latter."

---

**5.** How does an appellate court review silence? Our appellate function is to determine if the rights of each person have been governed by the same rule of law. In *Herrboldt v. Herrboldt,* 303 N.W.2d 571, 573 (S.D.1981), Henderson, J., dissenting, wrote: "Were appellate review treated superficially or the decisions of trial courts simply rubber-stamped, great divergences in practice and variations in results would arise between these courts of first impression, which would effectively nullify the concept of 'equal justice for all.'"

**6.** The theoretical posture of this dissent neither castigates the integrity of judges nor the fidelity to their oaths of office. The records of first D.W.I. offenders, to include the four who pleaded guilty and were sentenced on the date appellant was sentenced, glaringly exhibit a gross disparity in sentencing. This dissent would remand the case that the trial judge could thoughtfully reflect upon the gross disparity and make a written determination, if any, of improper considerations in the sentence.