STATE of South Dakota, Plaintiff and Appellee,

v.

Jesse Harold BAWDON, Defendant and Appellant.

No. 14829.

Supreme Court of South Dakota.

Argued Sept. 11, 1985.

Decided April 23, 1986.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Defendant Jesse Bawdon (Bawdon) was convicted of first-degree rape, SDCL 22–22–1(4), involving a six-year-old victim, A.K., who was left in Bawdon's care by her mother for a period of about twenty minutes. We affirm.

On October 8, 1983, Bawdon was at the home of A.K. and her mother. At approximately 11:30 p.m., a friend of mother's and mother left the home, leaving two sleeping children in the care of Bawdon. Approximately fifteen to twenty minutes later, mother and friend returned. After entering the home, mother noticed that A.K. was not in bed, but that the light in the bathroom was on. Mother walked in and found A.K. sitting on the toilet, with Bawdon kneeling beside her. A.K. appeared nervous and had been crying. Mother's friend asked Bawdon to explain what was going on. He stated that A.K. had to go to the bathroom and he was taking her. Bawdon then became nervous and after wiping what appeared to be blood off his hand, quickly left the house. Mother asked A.K. what happened, and she said Bawdon hurt her, and that he had "put his fingers down there." Mother carried A.K. to the bedroom, where she and friend noticed blood on A.K.'s genital area. At approximately 12:30 a.m., A.K. was then taken to the hospital by a police officer. A Department of Social Services caseworker, Ella Keen Goldsmith (Goldsmith), was called after the child's physical examination, and arrived at

the hospital at approximately 2:15 a.m. The caseworker brought along anatomically correct dolls and asked A.K. to explain what had happened. A.K. identified an adult male doll as Bawdon, and a female child doll as herself. A.K. was agitated, but explained the story to Goldsmith and Huron Police Department Officer Jeff Trandal (Trandal) by putting the adult male doll's hand into the crotch of the female child doll.

The child was examined by Dr. Mark Mogan (Dr. Mogan), who testified that upon examination he found dried blood in A.K.'s genital area, along with traumatized and torn hymel tissue. He also testified that an injury of the type A.K. suffered was consistent with penetration of the genital area. In the course of his examination, Dr. Mogan asked A.K. if someone had touched her genital region. A.K. responded by nodding affirmatively.

On October 11, 1983, Bawdon was charged with rape in the first degree. He initially entered a plea of not guilty. Following a plea bargaining arrangement, Bawdon changed his plea to guilty and in return the State recommended a sentence not to exceed twenty years. The trial court accepted this plea and sentenced Bawdon to twenty years in the state penitentiary. Bawdon subsequently attacked this plea by writ of habeas corpus, which was granted. Bawdon was then bound over to the Beadle County Sheriff to await trial. Prior to trial, Bawdon moved to suppress certain statements as hearsay, referring to a motion filed before his initial plea which named numerous individuals and asking, in addition to the suppression of hearsay offered by those persons, the suppression of hearsay offered by mother and friend. The trial judge rejected Bawdon's motion, claiming that the hearsay, which all involved statements or actions of A.K., was admissible under the excited utterance exception. SDCL 19–16–5. The court further noted that the actions and conduct of A.K. at the hospital were not hearsay and were admissible as observation testimony.

Bawdon raises two basic issues on appeal: (1) the trial court erred in admitting hearsay statements in his trial and deprived him of his constitutional right of confrontation; and (2) the trial court imposed an unconstitutionally impermissible sentence upon him in that it was a longer prison term than he had previously been sentenced to under the plea bargain arrangement.

We first examine the issue regarding admission of the statements made to Goldsmith and Trandal, who were named in the pretrial motion for suppression.

When reviewing the admission of evidence, this court will disturb the decision of the trial court only upon a showing of abuse of discretion. *State v. Percy*, 80 S.D. 1, 117 N.W.2d 99 (1962) (Percy I). *See also State v. Wedemann*, 339 N.W.2d 112 (S.D.1983).

The trial court admitted the statements under the excited utterance exception to the hearsay rule, SDCL 19–16–6. This court has held that such statements are admissible even if not strictly contemporaneous with the exciting cause. *Percy I, supra*. "The critical inquiry is whether they [the declarations] were made while declarant was still under the influence of the experience." *Id.*, 80 S.D. at 7, 117 N.W.2d at 102. In *Percy I*, the court noted that " '[w]here the victim is of an age as to render improbable that her utterance was deliberate and its effect premeditated the utterance need not be so nearly contemporaneous with the act as in the case of an older person.' " *Id., quoting State v. McFall*, 75 S.D. 630, 635, 71 N.W.2d 299, 301–302 (1955). In assessing whether a statement qualifies under the excited utterance exception, "the time that elapsed between the event and the statement is a factor to be considered, it is not determinative." *Id.* Each case must be determined from the circumstances surrounding the utterance. *Id.* In *State v. Percy*, 81 S.D. 519, 525, 137 N.W.2d 888, 892 (1965) (Percy II), the court noted that " '[t]he utterance must have been *before there has been time to contrive and misrepresent, i.e.*, while

the nervous excitement may be supposed still to dominate....'" (Emphasis in original.)

In *Percy II*, this court upheld the admission of statement made by a five-year-old victim of a sex crime to his parents approximately two to three hours after the alleged sex crime occurred. There was no evidence in the opinion that the victim was highly upset. Instead, the court stated that "the boy made the declarations in question to his parents under such stress ... as to warrant their admission in evidence." *Percy II*, 81 S.D. at 526, 137 N.W.2d at 892.

Bawdon cites *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984), for the proposition that demonstrations with the anatomically correct dolls would not fall within the excited utterance exception. In *McCafferty*, a seven-year-old girl arrived at school with a "hickey" on her neck, and a teacher questioned the child about the mark, using anatomically correct dolls. It was not the use of the anatomically correct dolls that caused us to hold the excited utterance rule inapplicable in *McCafferty*. Rather, it was the time lapse and the lack of evidence that the demonstration was accomplished while the child was under the stress of the event. In this case, A.K. had been exposed to the alleged rape approximately two and one-half to three hours before Goldsmith questioned her with the dolls. It would appear as if the rationales advanced by *Percy I* and *Percy II* most closely represent the circumstances of this case. We hold that the trial court did not err in applying the excited utterance exception and, such exception being a firmly rooted exception, reliability can be inferred without more. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

■ Bawdon also objects to the trial court's admission of testimony of the attending physician, Dr. Mogan, that A.K. nodded her head affirmatively when Dr. Mogan asked her during the examination whether anyone had touched her in the genital area. Bawdon did not include the name of Dr. Mogan in his pretrial motion to suppress. He claims that the scope of the motion, as noted at the motion hearing, was to suppress statements to all third parties. We find his contention lacking in credence, as Bawdon did subsequently file a motion to suppress testimony specifically of A.K.'s mother and mother's friend. Bawdon did object at trial and the trial court determined that the actions of A.K. in the hospital, which would include the affirmative nodding of her head in response to Dr. Mogan's question, were not hearsay. In this respect, the trial court was incorrect. Hearsay includes nonverbal conduct if it is intended to be an assertion. SDCL 19–16–1. *See also*, J. Weinstein & Berger, *Weinstein's Evidence* § 801(a)(01) (1985). The hearsay testimony was admissible, however, under SDCL 19–16–8, which allows admission of hearsay given for purposes of medical diagnosis. In *State v. Garza*, 337 N.W.2d 823 (S.D.1983), this court stated that hearsay was admissible under this exception by rape victims if it was given to the doctor to describe what happened to the victim, rather than who assaulted the victim. Dr. Mogan testified that A.K. nodded affirmatively in response to the question: "Did anyone touch you down there in the genital area?" This is the type of hearsay contemplated as admissible by the medical diagnosis exception. We hold that the trial court did not err in admitting the testimony of Dr. Mogan.

■ We next examine Bawdon's claim that his due process rights were violated, in that he was sentenced to a greater term of years following his conviction by a jury than originally given after his guilty plea pursuant to the plea bargain. As we previously noted, the first sentence was for a term of twenty years and the second sentence, after trial, was for twenty-five years. In essence, Bawdon claims that he is being denied due process by being punished for exercising his legal rights.

Bawdon relies on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), wherein the United States Supreme Court delineated the scope of judicial discretion in resentencing one

convicted on retrial after the successful reversal of the first conviction through appeal or collateral attack. The Court first emphasized that due process requires that vindictiveness against a defendant for having successfully attacked his first conviction play no part in resentencing. Additionally, to free a defendant from even apprehension of retaliatory motivation, which might unconstitutionally deter him from exercising his right to appeal or collaterally attack his first conviction, the Court adopted what has been termed a prophylactic rule:

> In order to assure the absence of such [vindictive] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670.

This court adopted the *Pearce* prophylactic rule in the case of *State v. Grey Owl*, 316 N.W.2d 801 (S.D.1982). *Pearce* and its progeny have never been applied by the United States Supreme Court in a plea bargaining situation. In fact, at least one federal circuit court of appeals has found that *Pearce* arguably does not apply in post-plea bargaining proceedings. *Ehl v. Estelle*, 656 F.2d 166 (5th Cir.1981); *Frank v. Blackburn*, 646 F.2d 873 (5th Cir.1980). The Fifth Circuit Court of Appeals citing to *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), found these decisions made it clear that

> a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused. (citations omitted) It is equally clear that a defendant is free to accept or reject the 'bargain' offered by the state. Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

*Frank*, 646 F.2d at 883.

In sentencing Bawdon following conviction at trial, the trial judge specifically noted that he was not increasing the sentence based upon his vindictiveness.* He noted that he agreed to accept the recom-

---

\* The sentencing transcript contains the following statement by the court: "I want to put on the record that I really don't view this as a penalty against Jesse for exercising his constitutional rights to appeal under a writ of habeas corpus, post conviction or otherwise, to appeal the misunderstanding that he had with his previous attorney and to be allowed to withdraw his plea of guilty.—I don't feel that the sentence that I have given now is a vindictive one nor any penalty involved. It is one that I very frankly would have given to the defendant even—even earlier if he had gone to trial and was found guilty of this offense on an earlier occasion. I would have given him that sentence. I guess that the only reason that the twenty years was given on an earlier time was by virtue of the plea bargain which I felt was reasonable under the then existing circumstances from the standpoint of having to go through the whole ordeal of a trial and the—and to save all the witnesses and the parties concerned from having to come into court and to testify. I thought it was judicially economical, I guess would be a better basis for it but, I—again, I want to emphasize that if Jesse had been found guilty of this by virtue of a trial before, I would not have sentenced him any differently than I am today."

mended sentence following the guilty plea based upon judicial economy. Judicial economy is clearly recognized as a desirable end for plea bargaining. *See Corbitt, supra.* We decline to apply the prophylactic *Pearce* rule in this case and agree with the Fifth Circuit decision. In effect, we find that Bawdon with his initial guilty plea "bought" leniency and then stopped payment on his check. Fundamental due process of law was not offended by the trial judge's sentencing in this case.

We affirm.

WUEST, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, and McMURCHIE, Circuit Judge, concur.

HENDERSON, J., concurs in part and dissents in part.

McMURCHIE, Circuit Judge, sitting for FOSHEIM, Chief Justice, disqualified.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in part, dissenting in part).

I agree with that aspect of the opinion pertaining to the admission of evidence and the authorities cited in support thereof.

Furthermore, I agree that this criminal offense cries out for a severe sentence. However, I would remand the sentencing procedure to reduce the 25-year sentence to 20 years upon the grounds and for the reason that the trial judge punished appellant for taking his case before a jury. By plea bargain, the sentencing judge reviewed the punishment of 20 years—to be just. By virtue of requesting the jury trial, after the plea bargain was lawfully set aside, the sentencing judge reviewed the punishment of 25 years—to be just. I do not view Bawdon as having stopped payment on his check because he exercised a writ of habeas corpus, which was duly granted.

Our State Legislature has adopted plea bargaining per SDCL 23A-7-8. Apparently, the State Legislature saw fit to adopt the plea bargaining process as state law. It is appreciated by this author that judicial economy is one of the reasons the State Legislature so adopted this policy. True, the trial judge tried to protect his flank from the *Pearce* rule by expressing that he was not being vindictive. And I am willing to give him the benefit of the doubt and say that he was not being vindictive.

Reasons for a more severe sentence, then, affirmatively appearing on the record, what are they? Only the economy angle was touched upon by the trial court. That consideration, in and of itself, should not be a sufficient reason for increasing the sentence by five years of confinement.

This author abides in the conviction that:

[A] jury trial is the backbone of our entire judicial system and every man, woman, and child has the right to put the State on its proof. The process of the jury trial is one of the few exceptions where we lawyers and judges still permit ordinary citizens to involve themselves in the judicial branch of government. Judges should not punish citizens for asking for jury trials.

*State v. Huettl,* 379 N.W.2d 298, 306 (S.D. 1985) (Henderson, J., dissenting in part, concurring in result in part). "Whether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed." *State v. Braun,* 351 N.W.2d 149, 153 (S.D.1984) (Henderson, J., dissenting). To support that statement in *Braun,* I cited these authorities: *Hess v. United States,* 496 F.2d 936 (8th Cir.1974); *United States v. Marzette,* 485 F.2d 207 (8th Cir.1973); *United States v. Stockwell,* 472 F.2d 1186 (9th Cir.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Hopkins,* 150 U.S. App.D.C. 307, 464 F.2d 816, 822 (1972); *Scott v. United States,* 136 U.S.App.D.C. 377, 419 F.2d 264, 269–74 (1969); *Baker v. United States,* 412 F.2d 1069, 1073 (5th Cir.1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); *United States v. Wiley,* 278 F.2d 500, 504 (7th Cir.1960). *See also, State v. Mollberg,* 310

Minn. 376, 246 N.W.2d 463 (1976); *Drink-water v. State*, 73 Wis.2d 674, 245 N.W.2d 664 (1976).

I fully appreciate that the *Pearce* rule, adopted in *State v. Grey Owl*, 316 N.W.2d 801 (S.D.1982), was under a retrial circumstance and this case is a plea bargaining scenario. Nonetheless, the writ of habeas corpus, an eternal friend of the oppressed, unlawfully imprisoned, and illegally restrained, should never be made unavailable for fear of an increased sentence in the event of its success.