STATE, Respondent v. MASTELLER, Appellant

(198 N.W.2d 503)

(File No. 10913. Opinion filed June 21, 1972)

**John E. Goodrich,** Pierre, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **David Stanton,** Asst. Atty. Gen., Pierre, **C. D. Kell,** Jones County State's Atty., Murdo, for plaintiff and respondent.

HANSON, Presiding Judge.

Defendant appeals from a conviction of driving a motor vehicle while under the influence of alcoholic liquor in the District County Court of Jones County.

At the outset of the trial defendant's motion to dismiss the complaint was properly denied. In describing the offense in a criminal complaint, information or indictment it is only necessary to designate the same "in such a manner as to enable a person of common understanding to know what is intended." SDCL 23-32-12(6). The complaint filed against defendant fully conforms to this standard. There is no requirement the statute alleged to be violated be cited. This is frequently done as a matter of clarity but it is not a legal necessity.

At the request of the arresting officer defendant consented to have a chemical analysis of his blood taken to determine its alcoholic content. For this purpose he was taken to the Murdo Hospital where its laboratory technician withdrew the blood sample. Defendant contends the results of the blood test should not have been admitted in evidence because the person who took the blood sample was not licensed and SDCL 32-23-14 is unconstitutionally vague in failing to define the term "laboratory technician".

In the process of rejecting petitioner's contention that a compulsory blood test taken to determine alcoholic content constituted an unreasonable search and seizure, the United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, made the following pertinent comment: "Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." Similarly, it is routine medical practice to have blood samples withdrawn by medical assistants in hospitals and clinics. In recognition of these well known facts, SDCL 32-23-14 provides:

> "Only a physician, laboratory technician, registered nurse, or medical technician or medical technologist acting at the request of a law enforcement officer can withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of a urine, breath or other bodily substance specimen."

In this permitted class only physicians and registered nurses are required by law to be licensed. In authorizing laboratory technicians, medical technicians, and medical technologists to withdraw blood samples our statute merely adopts approved medical practice. It assures the individual that blood sampling will be performed by trained medical personnel in clinical surroundings. Our legislature was obviously aware that some hospital, clinic, laboratory, or physician would be responsible for the training, qualifications, and competence of medical assistance employed and supervised by them to perform the routine task of withdrawing a blood sample. No other standard is needed for the protection of the individual or the preservation of the purity of the blood sample.

In the present action the blood sample was taken at the Murdo Hospital by a laboratory technician employed by the hospital. She had previously taken technical training at an institute in Denver, Colorado, and possessed a certificate from such school. There is no contention the technician was incompetent, unqualified or did not follow approved methods, or did not extract the sample in a safe manner. The blood sample was taken at the request of a law enforcement officer, with the consent of defendant. After withdrawing the blood the laboratory technician handed the sample to the arresting officer who immediately mailed it to the State Chemical Laboratory where it was tested by the State Chemist. Under the circumstances, the result of the chemical analysis, as testified to by the State Chemist, was properly admitted in evidence.

 SDCL 32-23-1 makes it unlawful for any person "Who is under the influence of intoxicating liquor" to operate or drive any vehicle. In his charge to the jury the trial judge instructed that:

"it is not essential to the existence of the offense that the driver of the automobile should be so intoxicated that he can not safely drive a car. The expression, 'Under the influence of alcoholic liquor', covers not only all well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in alcoholic liquor and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess."

A similar instruction was approved as a clear and concise definition of the phrase "under the influence of intoxicating liquor" in State v. Dale, 66 S.D. 418, 284 N.W. 770. The use of the term "alcoholic liquor" instead of "intoxicating liquor" in the instruction is without significance as the two terms are synonymous. State v. Batterman, 79 S.D. 191, 110 N.W.2d 139.

In lieu of the court's instruction, defendant contends it was error to refuse South Dakota Criminal Pattern Instruction No. 3-7-400b as requested by him. It defines the phrase "under the influence of intoxicating liquor" as follows:

"A person is under the influence of intoxicating liquor when, as a result of drinking intoxicating liquor, his nervous system, brain or muscles are so affected as to impair, to an appreciable degree, his ability to operate a motor vehicle in the manner he otherwise would be able to do had he full possession of his faculties. 'Under the influence of intoxicating liquor' means the abnormal mental or physical condition of a person which is the result of the drinking of intoxicating liquor and which deprives him of that clearness of mind and normal control of himself which he would otherwise have except for his drinking, or which impairs his normal judgment."

The trial court properly refused to give the requested Pattern Instruction as it imposes an unnecessary burden on the State to prove a defendant's condition and ability to operate a motor

vehicle was impaired "to an appreciable degree" as a result of drinking intoxicating liquor. See City of Milwaukee v. Richards, 269 Wis. 570, 69 N.W.2d 445, in which the Wisconsin Court reached the same conclusion. A pattern Jury Instruction is always properly refused whenever a different instruction more clearly and accurately states the applicable law.

Finding no merit in other alleged errors, the judgment appealed from is affirmed.

All the Judges concur.