**STATE of South Dakota,**

v.

**Richard D. HUETTL.**

**Nos. 14669, 14678.**

Supreme Court of South Dakota.

Argued Feb. 5, 1985.

Decided Dec. 11, 1985.

Jeffrey P. Hallem, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Drew C. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellant.

MORGAN, Justice.

A jury found Richard D. Huettl (Huettl) guilty of driving while under the influence of alcohol (DWI) in violation of SDCL 32–23–1. Although it was his first offense, the trial judge fined him $300.00 plus costs of $208.68 and sentenced him to sixty days in the Spink County Jail, with forty days conditionally suspended and revoked his driver's license for forty-five days. Huettl appeals from the conviction and the sentence. The State filed a notice of review regarding the trial court's suppression of preliminary breath test (PBT) results. We affirm on all issues.

Huettl was the driver of an automobile stopped by two police officers in Redfield, South Dakota, when they observed his vehicle cross the center line of the road as he proceeded through town. When the officers noted an odor of alcohol on Huettl's breath and observed his difficulty in finding and then extracting his operator's license from his wallet, they asked him to step back to the patrol car. The officer then administered some field sobriety tests in which Huettl did poorly. The officers administered a PBT resulting in a red light, indicating more than .10 blood alcohol content and they arrested him for violation of SDCL 32–23–1. Huettl was requested to and did submit to a blood test. The sample was taken at the hospital, packaged in the standard vial and cardboard container, and mailed to the State Chemical Laboratory (State Lab). The State Lab later notified the Redfield Police Department that the vial containing Huettl's blood was broken and the sample lost in transit to the laboratory in Vermillion.

A preliminary hearing was held, Huettl was arraigned, and an information was filed against him. Huettl then filed a motion to dismiss the information based upon the loss of his blood sample before it was tested. Huettl's motion was denied. At a hearing in chambers immediately prior to trial, Huettl's counsel made a motion and requested both sides to refrain from discussing or mentioning the fact that a PBT was given just prior to Huettl's arrest. The trial court granted the motion. The case was presented to a jury and Huettl was convicted of DWI.

Huettl raises four issues on appeal: (1) Whether the trial court erred in denying his motion for dismissal because the loss of the blood sample violated his rights to due process; (2) whether the evidence sufficiently supports the conviction under SDCL 32–23–1; (3) whether the trial court com-

mitted reversible error when it permitted an unendorsed, unsequestered witness to testify for impeachment purposes; and (4) whether the trial court's sentence indicated an abuse of discretion and violated Huettl's right to equal protection. The State filed a notice of review and requested this court to consider whether PBT results are admissible as evidence at trial.

■ Huettl first claims a *Brady v. Maryland* violation[1] of his constitutional right of due process because the blood sample was lost in the mail. In *State v. Muetze,* 368 N.W.2d 575 (S.D.1985), we examined the *Brady* doctrine with respect to information the prosecutor had (original investigative notes). We noted that *Brady* is actually an extension of *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Some key language on the reasoning of the Court in *Mooney* is as follows: "[The requirement of due process] cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured." 294 U.S. at 112, 225 S.Ct. at 342, 79 L.Ed. at 794.

The *Brady* Court merely extended the *Mooney* doctrine by saying it applied irrespective of the good faith or bad faith of the prosecution. The *Brady* Court further reasoned: "That (withholding of exculpatory evidence) casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though ... his action is not 'the result of guile,'...." 373 U.S. at 88, 83 S.Ct. at 1197, 10 L.Ed.2d at 219. In light of the reasoning behind the doctrine as we have detailed, we cannot see any possible violation in this case. The blood sample was lost because the container broke in the process of transmittal by mail. That is clearly not a contrived action on the part of the prosecution. We recognize that we live in an imperfect world and that the United States Postal Service is subject to the same imperfections as ordinary mortals. In this case, the mails did go through; however, somewhere along the line the package was handled in such a manner that the container broke.

Huettl argued at great length that there is no question that the evidence was exculpatory, pointing to his testimony and that of his three companions that he had only had three beers all day.[2] Then, the first remark counsel makes at oral argument before this court is that he has no argument regarding the probable cause for the arrest of his client. The two arguments are inconsistent. But in our view, for the reason that we first expressed, the materiality and the exculpatory nature of the evidence, if it be so, has no bearing on the issue. *Mooney* and *Brady, supra,* simply do not apply. We reject the decision of the Iowa Supreme Court in *State v. Brown,* 337 N.W.2d 507 (Iowa 1983), and the cases cited therein. Their reliance on *Brady,* as they suggest, may have gone no deeper into its reasoning than the headnotes.

We point out that our decision on this issue is clearly limited to the rather unusual fact situation presented by this record.

In his second issue, Huettl challenges the sufficiency of the evidence to sustain the conviction. Our view on this issue has been recently stated in *State v. Braun,* 351 N.W.2d 149, 151 (S.D.1984):

It is well settled that in determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict. (citations omitted).

---

**1.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**2.** This same testimony was heard by the jury and apparently rejected by them.

Under this standard of review, the court does not resolve evidentiary conflicts or determine the credibility of witnesses that testify. These functions lie solely with the jury as the ultimate finder of fact. *State v. Battest*, 295 N.W.2d 739 (S.D.1980). This court will only set aside the jury verdict where the evidence and reasonable inferences flowing from it do not sustain a rational theory of guilt. *State v. Wedemann*, 339 N.W.2d 112 (S.D.1983).

 Huettl's counsel appears to be under a misconception as, throughout his brief, counsel suggests the State was obligated to prove beyond a reasonable doubt that Huettl was too intoxicated to drive; that his blood alcohol content was greater than .10. Counsel thus disregards the legislative change of the statute in order to broaden its coverage. A showing that a person drove or controlled a motor vehicle while *under the influence of* alcoholic beverage is sufficient to sustain a conviction under SDCL 32–23–1(2). "Under the influence" has been defined as covering not only all well-known " ' ... conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in alcoholic liquor and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.' " *State v. Masteller*, 86 S.D. 514, 517, 198 N.W.2d 503, 505 (1972).

 The statutory presumption that a person with .10 blood alcohol is under the influence is irrelevant under SDCL 32–23–1(2), the statute under which Huettl was charged.

 While there was certainly conflicting evidence as to Huettl's condition that night, the testimony of his companions against that of the arresting officers, it would serve no purpose to detail the contradictions. The jury heard all the conflicting testimony and found against Huettl. There clearly was evidence to support the verdict and this court must accept the evidence and inferences to be drawn therefrom which are most favorable to and support the verdict. *State v. Moves Camp*, 286 N.W.2d 333 (S.D.1979); *State v. Mastetler*, 272 N.W.2d 833 (S.D.1978).

 Huettl's third argument on this appeal is that the trial court committed reversible error when it allowed a State's witness to testify in the course of the State's presentation of its case, over Huettl's objection, that the witness was not endorsed on the information and that the witness was present while the State presented its other evidence despite a court order to sequester all witnesses. The witness in question was Alan Albright (Albright), a Spink County Deputy Sheriff. The record indicates that Albright had interviewed one Howard Vink (Vink) by telephone on the day preceding trial. Vink, at whose farm Huettl and his companions had stopped during the evening preceding the arrest, was alleged to have told Albright that Huettl and the others had drunk beer at his farm. When called as a witness by the State, however, Vink testified that Huettl and his companions did not consume any alcoholic beverages during their visit to his farm. State then sought to call Albright for the purpose of impeaching the testimony of Vink. Albright had not been endorsed on the information as a witness per SDCL 23A–6–10 and he had been present in the courtroom during the course of the trial. The trial court, pursuant to motion, had entered a sequestration order at the commencement of the trial proceedings. The trial judge postponed his ruling on the objection until the nature of the interrogation could be determined and allowed the state's attorney to solicit Albright's testimony that Vink had told him that Huettl and his companions had beer with them when they arrived at his farm and that they each drank at least one beer and maybe two beers while they were there. In ruling on the objection regarding endorsement, the trial judge took the position that SDCL 23A–6–10 [3] does not deal

___

**3.** SDCL 23A–6–10 provides:

The prosecuting attorney shall endorse upon each information the names of the wit-

with witnesses called for impeachment purposes. We have said that the statute does not preclude calling unendorsed witnesses when the materiality of their testimony is not known until trial. *State v. Wilson*, 322 N.W.2d 866 (S.D.1982); *State v. Brown*, 285 N.W.2d 848 (S.D.1979). Late endorsement may be allowed at the trial court's discretion. *State v. Wolford*, 318 N.W.2d 7 (S.D.1982); *State v. Coe*, 286 N.W.2d 340 (S.D.1979); *Brown, supra; State v. Provost*, 266 N.W.2d 96 (S.D.1978). In the absence of some showing that the state's attorney acted in bad faith or abused his position in deliberately withholding the witness' name and that the accused was substantially prejudiced, admission of the testimony will not constitute grounds for reversal. *Coe, supra; Brown, supra.* The state's attorney explained the trial situation outlined above when Huettl's counsel moved for mistrial on this alleged error. There was no abuse or bad faith on his part and Huettl was not substantially prejudiced by allowance of Albright's testimony. Huettl's counsel did not move for a continuance in order to prepare himself for Albright's testimony. That failure is fatal to his argument of prejudice. *Wilson, supra; Coe, supra.*

■ Huettl has not shown that he was prejudiced by the fact that Albright was in the courtroom during part of the testimony rather than sequestered under the court's order. The purpose of the sequestration order was to prevent perjured testimony. Huettl's counsel had access to Albright's notes regarding his interview with Vink. We can assume that if Albright's testimony was not consistent with his notes, we would have heard about it.

Huettl's final argument is that the trial court abused its discretion and violated his constitutional and statutory rights when it fined him $300.00, plus costs of $208.68, and imposed a net twenty-day jail sentence. Huettl contends that because he pled not guilty and requested a jury trial his sentence and fine were increased from the usual sentence and fine imposed on defendants who had pled guilty to the same offense. At Huettl's request, copies of all of the first-offense DWI convictions in Spink County between January 1, 1984 and July 10, 1984, nineteen in all, were included in the settled record. Eighteen of those convicted received a net two-day jail sentence and a fine of $250.00, of which $25.00 to $75.00 was suspended. Huettl, the nineteenth defendant, was sentenced as noted above. Huettl was the only defendant among the nineteen who pled not guilty and requested a jury trial.

■ We first note that trial judges have broad discretion to fix sentences within the statutory limits. *Braun, supra.* We examine Huettl's argument from the perspective of a violation of his equal protection rights under the Fourteenth Amendment. We have held that "in the administration of criminal justice, the imposition of different punishments ... upon one than is imposed upon all for like offenses is a denial of [equal protection]." *State v. King*, 82 S.D. 514, 516, 149 N.W.2d 509, 510 (1967). In *State v. Goodale*, 86 S.D. 458, 198 N.W.2d 44 (1972), we pointed out that such rule expresses the law with respect to statutes providing different punishments for different classes of offenders. The opinion went on to say "we do not believe that such holding means 'that persons convicted of the same crime cannot be given different sentences depending upon their individual culpability and need for rehabilitation.'" 86 S.D. at 467, 198 N.W.2d at 49.

■ Huettl argues that the harsher sentence was imposed because he had exercised his right to trial by jury. This is based on a statement made by the trial judge in the sentencing colloquy: "The court does recognize the rule that defendants are entitled to trial and the court will

nesses known to him at the time of its filing. Any further endorsement of names upon the information shall be done only with permission of the court. This section shall not preclude calling any witnesses whose names or

the materiality of whose testimony is first learned by the prosecuting attorney during the trial. This section does not require the endorsement of names of witnesses which are to be used only in rebuttal.

not *on that fact alone* feel it necessary to increase any sentence." (Emphasis added in Huettl's brief.) Standing alone, that statement might appear to indicate that the judge was considering it as one of several factors; but we then consider the next sentence in the colloquy: "It is only on the other factors that the court has seen fit to make this sentence greater than the others." The other factors the trial court refers to are: (1) Huettl had a previous DWI conviction some seven or eight years previous; and (2) based on the information that Huettl had failed the PBT, blown a red light, the trial court decided that Huettl had lied in his testimony as to the amount he had drunk prior to his arrest. From a review of the entire colloquy, we are satisfied that the trial court was not punishing Huettl for exercising his constitutional right to trial by jury.

▇ Alternatively, Huettl then attacks the "other factors." He argues that the trial court improperly considered evidence regarding results of the PBT when the trial court had sustained his motion to keep such results out of evidence at the trial. Huettl attacks the foundation laid at the sentencing hearing where the officer, that the State called as a witness, was not the officer who had given the test. But this ignores the fact that the trial judge had earlier ruled on the oral suppression motion to keep out the results. The trial judge made a considerable record on his acquaintance with PBT's through previous trials and testimony of the State Chemist and conversations with him. SDCL 19–9–14(4) provides that the rules of evidence do not apply to sentencing hearings. In our opinion the results of the PBT were properly before the trial court at the sentencing hearing.

▇ Huettl then argues that the trial court's conclusion convicted him of perjury while denying him the right to confront the witnesses and evidence against him. That is a bit over-dramatic. As pointed out in *State v. Carsten*, 264 N.W.2d 707, 710 (S.D.1978):

One of the factors that entitles a trial court's findings of fact to be given great weight is the opportunity of the trial court to judge the credibility of witnesses. Cf. SDCL 15–6–52(a). We see no reason why a trial judge should be any more restricted in judging a criminal defendant's credibility at a sentencing hearing than in any other type of trial proceeding.

In a special concurrence in *Braun, supra*, former Justice Wollman points out the holding of the United States Supreme Court in *United States v. Grayson:* "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." 438 U.S. 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582, 590 (1978).

With respect to our limitations on the use of the PBT results in trials, that is the last issue herein raised by the State by notice of review. Regardless of our holding on the use of PBT results as evidence in the case-in-chief, the results were not so used in this case. The trial court did not use the results to determine that Huettl was driving under the influence; the jury had already made that determination without the PBT results. The trial court merely considered that, in its experience on the bench on numerous DWI cases, Huettl could not have failed a test if he had actually consumed only the few beers over the period of time as he had testified.

▇ Huettl attacked the use of his eight-year-old DWI conviction as a factor considered to impose the sentence. He points out that the legislature by enacting SDCL 32–23–2, –3, and –4, provided automatic enhancement for individuals convicted of DWI within a five-year period. He thus claims that the legislation lifted all future sanctions that could be imposed because of the prior DWI's. Huettl misreads the statutes. These statutes respectively provide for penalties for first, second, and third-offense DWI. SDCL 32–23–4.1 provides that "[n]o previous conviction for, or

guilty plea to a violation of § 32–23–1 occurring more than five years prior to the date of the violation being charged may be used *to determine that the violation being charged* is a second, third or subsequent offense." (Emphasis added.) Huettl was charged as a first offender. The statutes were not violated. We do not read the statutes as being other than direction to the prosecution on charging the offense. There is nothing to indicate any intent to restrict the sentencing authority of a judge to consideration of the five-year period.

■ By notice of review, State challenges the trial court's ruling that the PBT results were inadmissible at trial absent compliance with SDCL 32–23–14.1. Subsequent to the initial briefing, our decision in *State v. Anderson,* 359 N.W.2d 887 (S.D. 1984), was handed down. In *Anderson,* we held, in essence, that the PBT was a field sobriety test to be used by arresting officers for establishing probable cause to arrest for a violation of SDCL 32–23–1. We distinguished the PBT from the chemical test under SDCL 32–23–10, holding that the PBT could be given upon reasonable suspicion of violation, that the refusal to take the PBT was not grounds for license revocation and that the results of the PBT are not admissible in evidence at trial unless the accused raises the issue of probable cause.

By supplemental brief, State takes issue with the latter determination terming it "dicta," and asks us to overturn it. We decline to do so. In *Anderson, supra,* we pointed out that the PBT is accomplished through the use of a portable device as accurate statistically as intoxilyzers, the results of which are currently used in this state as evidence to show blood alcohol levels in excess of .10 in violation of SDCL 32–23–1. Anderson argued that *no* chemical analysis of the breath is justified absent arrest per the implied consent law. In *Anderson,* State asserted that the PBT results are not used as evidence of alcoholic content above or below .10, the presumption level, but are only used as a pre-arrest sobriety test to establish probable cause

for arrest and the administration of evidentiary tests, *i.e.,* blood tests or intoxilyzer. State's reply brief in *Anderson* specifically argued: "It is of course, only the chemical analysis of a person's blood, breath or other bodily substance authorized under the implied consent laws of SDCL 32–23–10 et seq. that can be used to establish a violation under SDCL 32–23–1.1 or the necessary foundation for SDCL 32–23–7, presumption instruction." We agreed with State's argument, pointing out that SDCL 32–23–1.2, under which the PBT escapes the requirements of the implied consent law, specifically provides: "If such test indicates that such operator has consumed alcohol, the law enforcement officer may require such operator to submit to a chemical test."

For a period of over twenty-five years the implied consent law, SDCL 32–23–10 et seq., has been in effect. A considerable body of decisions has been built up around that law. As we pointed out in *Peterson v. State,* 261 N.W.2d 405, 409 (S.D.1977), "a chemical test, properly conducted, is the best available method of determining the blood alcohol content of the driver, which, in turn, is accepted as the most reliable method of determining whether the driver is or is not under the influence of intoxicating liquor." Because of this high degree of reliability and the general public acceptance of such result, the legislature in 1980 enacted SDCL 32–23–10.1 which authorized admission into evidence at trial the refusal to take the implied consent test as an explanation why, in such cases, the State did not introduce evidence of test results. Through the implied consent law, in exchange for following its mandates of arrest on probable cause and advice regarding the right to refuse, the State has a test which yields highly regarded evidence of guilt. The results of a chemical analysis properly administered with the requisite warnings is, of course, admissible in evidence in conjunction with the statutory presumptions of SDCL 32–23–7, in prosecutions under SDCL 32–23–1(1). We have held, however, that such results are also admissible, without the presumptions of SDCL 32–23–7, in

prosecutions under SDCL 32–23–1(2) where the warnings were inadequate, *State v. Bunnell,* 324 N.W.2d 418, 420 (S.D.1982), but never have we held the results admissible absent prior arrest. To the contrary, we have held arrest to be a prerequisite. *State v. Bosanco,* 87 S.D. 605, 213 N.W.2d 345 (1973); *State v. Batterman,* 79 S.D. 191, 110 N.W.2d 139 (1961). The same assistant attorney general who stood before us and argued *Anderson, supra,* asserting that the PBT was only used as a *"pre-arrest"* sobriety test to establish the probable cause, now stands before us and asks us to extend the use of the PBT results to direct evidence at trial. This would, in effect, repeal the implied consent law. That we will not do.

Nor do we equate the results of the PBT with evidence of the conduct of drivers in attempting to take the usual course of field sobriety tests, i.e., walking heel-to-toe, standing on one leg, recitation of the alphabet or numbers. Testimony of faltering gait or faulty recitation is far different than allowing testimony of the *results* of a chemical analysis. The introduction of the latter would in effect be proof of the ultimate issue.

We reaffirm our holding in *Anderson, supra,* that the results of the PBT are admissible at trial only in the event of a probable cause challenge.

We hold, therefore, that the trial court arrived at the correct result in excluding the PBT evidence, but for the wrong reason. For all the reasons stated herein, we affirm the decision of the trial court.

FOSHEIM, C.J., and WUEST, Acting Justice, concur.

HENDERSON, J., dissents in part and concurs in result in part.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting in part, concurring in result in part).

This appeal arises from the same circuit, same circuit judge, where citizens who ask for a jury trial are punished more severely than those who do not ask for a jury trial. *See* numerous decisions and authorities in dissent of this author in *State v. Braun,* 351 N.W.2d 149, 152 (S.D.1984). *Braun* is cut off of the same bolt of legal goods.

Defendant here—had the audacity—to ask for a jury trial. You must not do this in Spink County! He was found guilty and sentenced, inter alia, to 20 days in jail; those who pleaded guilty (18 other citizens) before this same judge, who were also first DWI offenders, received a 2-day jail sentence.* Moreover, Huettl's fine was greater and costs of $208.68 were assessed. This was not part of the sentence with the other 18 defendants. The message is clear: Do not ask for a jury trial in Spink County—you will be punished for it if you do! I dissent to the rationale and result of the majority opinion concerning defendant's sentence; it is a rank violation of the equal protection clause. With all other aspects of the majority opinion, I concur in result.

The jury trial is the backbone of our entire judicial system and every man, woman, and child has the right to put the State on its proof. The process of the jury trial is one of the few exceptions where we lawyers and judges still permit ordinary citizens to involve themselves in the judicial branch of government. Judges should not punish citizens for asking for jury trials.

Purchased by the blood of patriots, the right to a jury trial is now used as an additional factor to levy additional punishment. We have strayed a long way from its original intent. Lexington, Concord, Siegfried Line, Flanders Field, Normandy, Anzio Beach, Saipan, Marshall Islands, Iwo Jima, Old Baldy, Hill 101, Vietnam, what did they all stand for? Well, for openers,

---

* The judge's statement, set forth in the majority opinion, reflects that the judge considered the jury trial as a sentencing factor. Apparently, this Court approves of this judge considering inadmissible evidence, namely, the PBT, when he sentenced this defendant. So far as this defendant was concerned, he was to be sentenced as a first offender as he was charged as a first offender.

"Equal Justice Under Law." *See* inscription on the United States Supreme Court Building, Washington, D.C.