#23565-a-SLZ

**2006 SD 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,               Plaintiff and Appellee,

    v.

DEBORAH J. MOTZKO,                   Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIMOTHY R. JOHNS
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota                and appellee.

DAVID L. CLAGGETT                    Attorney for defendant
Spearfish, South Dakota             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 3, 2005

OPINION FILED **02/08/06**

#23565

ZINTER, Justice

[¶1.]          Deborah Motzko was convicted of driving under the influence of an alcoholic beverage.  She appeals contending that:  1) the evidence was insufficient to support the conviction; 2) the trial court should have considered jurors' affidavits in ruling on a motion for new trial; and 3) the trial court erred in refusing her jury instruction suggesting that in South Dakota it was not necessarily illegal to drink and drive.  We affirm.

**Facts and Procedural History**

[¶2.]          On August 5, 2004, Motzko was driving a motorcycle from Sturgis to Spearfish, South Dakota.  As she exited an interstate highway at approximately 9:35 p.m., a pickup truck struck the rear of her motorcycle.  The contact caused the motorcycle to slide approximately ten feet, resulting in an injury to Motzko's ankle.  Two Spearfish police officers and two highway patrol troopers arrived on the scene to investigate the accident.  Shortly thereafter, an ambulance transported Motzko to a hospital in Spearfish.

[¶3.]          As the ambulance left the scene, Trooper Mark Chamberlain asked Trooper Ed Fox to go to the hospital and gather information about the accident.  At the hospital, Fox waited for Motzko to complete her X-rays and then conducted an interview.  While talking with Motzko, Fox noticed what he described as "the odor of an alcoholic beverage coming from -- what seemed to be coming from her person."  Fox asked Motzko whether she had been drinking.  Motzko admitted that she had been drinking, stating that she had one glass of wine about two or three hours

-1-

before the accident.[1]  Motzko was subsequently arrested, and at 11:20 p.m., she consented to a blood test.  After Motzko was released from the hospital, Fox transported her to the county jail.

[¶4.]      Upon arriving at the jail, Fox placed the blood sample in a lock box. The blood sample was stored in the lock box until it was shipped to Dr. Robert Looyenga for testing.[2]  The blood was tested twice.  The first test indicated that Motzko's blood alcohol level was 0.114 percent.  The second test of the same sample indicated a blood alcohol level of 0.118 percent.

[¶5.]      A Lawrence County grand jury indicted Motzko on alternative counts of driving while under the influence of an alcoholic beverage.  Count I alleged that she drove while there was "0.08 percent or more by weight of alcohol in her blood" in violation of SDCL 32-23-1(1).  Alternatively, Count IA alleged that she drove "while under the influence of an alcoholic beverage" in violation of SDCL 32-23-1(2).  The trial court denied Motzko's motions for judgments of acquittal at the close of both the State's and Motzko's cases.  The jury acquitted Motzko of Count I (driving with a 0.08 percent or higher blood alcohol level) but found her guilty of Count IA

---

1.      However, Motzko's trial testimony indicated that she consumed the wine sometime between 7:30 and 8:30 p.m., which would have been one to two hours before the accident.

2 .     Motzko argues that the State failed to establish a chain of custody for the blood test tubes.  Although Motzko's attorney questioned Trooper Fox about the chain of custody at the trial, counsel never raised an objection to the court.  The "failure to object at trial constitutes a waiver of th[at] issue on appeal."  State v. Moran, 2003 SD 14, ¶21, 657 NW2d 319, 325 (quoting State v. Andrews, 2001 SD 31, ¶19, 623 NW2d 78, 83-84).

(driving under the influence).  The trial court subsequently denied Motzko's renewed motion for judgment of acquittal and motion for new trial.

## Analysis and Decision

### *Sufficiency of the Evidence*

[¶6.]       Motzko's motions for judgments of acquittal and new trial alleged that the evidence was insufficient to support the conviction.  In reviewing the sufficiency of the evidence, the issue is whether there is evidence in the record which, "if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt."  State v. Pasek, 2004 SD 132, ¶7, 691 NW2d 301, 305.  "In making that determination, 'we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.'  Moreover, 'the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence.'"  *Id.*  We do "not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence."  State v. McKinney, 2005 SD 73, ¶26, 699 NW2d 471, 480 (citing *Pasek*, 2004 SD 132, ¶7, 691 NW2d at 305 (citation omitted)).  "Thus, '[a] guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt.'"  *Pasek*, 2004 SD 132, ¶7, 691 NW2d at 305 (quoting State v. Jones, 521 NW2d 662, 673 (SD 1994) (citation omitted)).

[¶7.]       Motzko argues the evidence was insufficient because Troopers Chamberlain and Fox *observed* little, if anything, indicating that she was under the influence.  In fact, the only observations of significance were Fox's detection of the odor of alcohol coming from her person and Motzko's admission of having consumed

wine earlier that evening.  Based on the troopers' minimal observations as well as the acquittal on the 0.08 percent blood alcohol charge, Motzko contends that the evidence was insufficient to prove she was under the influence of an alcoholic beverage at the time of the accident.  However, we must examine Motzko's contentions considering both the proof necessary to sustain an "under the influence" conviction under SDCL 32-23-1(2) and the evidential effect of blood alcohol levels of less than 0.08 percent.[3]

[¶8.]        SDCL 32-23-1(2) provides:  "No person may drive or be in actual physical control of any vehicle while: . . . [u]nder the influence of an alcoholic beverage. . . ."  In determining whether a person was "under the influence," this Court has often stated:

> that this phrase covers "not only all well known and easily recognized conditions and degrees of intoxication, *but any abnormal mental or physical condition which is the result of indulging in any degree in alcoholic liquor and which tends to deprive [the defendant] of that clearness of intellect and control of himself which [the defendant] would otherwise possess.*"

State v. Hullinger, 2002 SD 83, ¶14, 649 NW2d 253, 259 (quoting State v. Masteller, 86 SD 514, 517, 198 NW2d 503, 505 (1972) (emphasis added)).  Therefore, it is not required that a defendant display the easily observable signs of impairment such as staggering or slurred speech.  Rather, any abnormal mental or physical condition that deprives an individual of the clearness of intellect and self control that they would otherwise possess will suffice.

---

3.      We assume without deciding that the jury found Motzko's blood alcohol was less than 0.08 percent at the times Motzko admitted that she was driving.

[¶9.] In this case, there is record evidence indicating that Motzko had an abnormal mental and physical condition depriving her of the clearness of intellect and self control she normally possessed. Trooper Fox testified that he observed the odor of alcohol, an abnormal physical condition, coming from Motzko's person. In fact, Motzko admitted that she had consumed the wine one to two hours before the accident.[4] Dr. Looyenga then explained the effect of this alcohol on Motzko's mental and physical conditions at various blood alcohol levels. He testified that an individual's observable motor skills, such as staggering and slurred speech, often do not become impaired until the blood alcohol level reaches the 0.15 to 0.18 percent range, or even higher depending on the individual's tolerance. However, Dr. Looyenga testified that an individual's cognitive abilities, which include less observable conditions such as reaction time, peripheral vision, divided attention, and binocular vision, become impaired around the 0.06 and 0.07 percent level. Thus, while the well known and easily recognizable signs of intoxication (motor skills) may not have been observable, under the evidence presented, the jury could have found that Motzko's intellect and self control (cognitive abilities) were impaired at a blood alcohol level of less than 0.08 percent.

[¶10.] We acknowledge that the jury may not have believed that Motzko's blood alcohol level was 0.08 percent or higher at the times Motzko was driving.

---

4. Motzko testified at trial that she left her business establishment around 7:30 p.m., went to a bar with her friends, had a glass of wine about the size of a "Solo plastic cup" or a little smaller, returned to her establishment to do a few errands, and left for a second time around 8:30 or 8:40 p.m. to stop by her house and drive to Spearfish.

However, the jury was properly instructed that if her blood alcohol level was between 0.05 and 0.08 percent, there was no presumption of being under the influence, but the blood alcohol level may still be considered in determining the defendant's guilt or innocence. *See* SDCL 32-23-7 (containing the presumptions that arise from a chemical analysis). Therefore, the fact that Motzko had less than a 0.08 percent blood alcohol level was irrelevant in this prosecution under SDCL 32-23-1(2). *See* State v. Huettl, 379 NW2d 298, 302 (SD 1985) (indicating that the statutory presumptions relating to being "under the influence" are irrelevant in a prosecution under SDCL 32-23-1(2)).

[¶11.] More importantly, it must be remembered that Dr. Looyenga was questioned on other possible theories regarding Motzko's alcohol consumption, correlating blood alcohol levels, and impairment at the time she was driving her motorcycle. All the hypotheticals assumed a 120 pound female had consumed alcohol, was involved in an accident at 9:30 p.m., and had blood drawn at 11:20 p.m. When asked what the blood alcohol level of the female would have been if she had consumed a five ounce glass of wine three hours before the blood draw, Dr. Looyenga testified that her blood alcohol level would have reached a peak of 0.044 percent, it would have dropped to roughly 0.02 percent two hours prior to the draw (the time of the accident), and it would have been zero at the time of the draw. Thus, Motzko's theory of what occurred was scientifically impossible if the jury believed that *any* level of alcohol was present in her blood. Additionally, a second hypothetical was then presented in which the female would have consumed an eight ounce glass of wine between 8:30 and 8:45 p.m. Dr. Looyenga testified that under

this scenario, the blood alcohol level would have been 0.072 percent at its peak and 0.06 percent at the time of the accident.[5] Considering the cognitive impairment that exists at the 0.06 to 0.072 percent range, this theory supports Motzko's conviction.[6]

[¶12.] As previously stated, the issue before us is whether there is record evidence, which if believed by the jury, would be sufficient to sustain a verdict of guilty beyond a reasonable doubt. *Pasek*, 2004 SD 132, ¶7, 691 NW2d at 305. In deciding that issue, we do not retry the case and act as the jury in determining guilt beyond a reasonable doubt. Rather, because we are an appellate court, we must reach our conclusion through the application of our well established standard of

---

5. The pertinent examination of Dr. Looyenga occurred as follows:
Defense Counsel: If the Defendant simply had one drink of wine, a glass of wine, I should say, between 8:00 and 8:30, and we assume her weight as we've already talked about, but we don't assume any blood test at a later date -- later time, what would you anticipate her blood alcohol to be at 9:30?

Dr. Looyenga: See, once again, I would say, well, depends on how large the glass is. In recent years I've run into all kinds of problems with this with tall-boys and beers that contain 22 ounces or whatever. And so I don't know what's out there in terms of sizes of glasses of wine. But if a person drank an eight-ounce glass of wine, which is a rather large glass of wine, I would anticipate for this individual to have a blood alcohol level of .072. And if it was, as you indicated, between 8:30 and 8:45, by 9:30, roughly an hour later, even using a low rate of elimination, subtracting only a .01 to .015, the blood alcohol would be a .06. I mean, half of what we measured, basically.

6. Because Motzko's testimony at trial indicated that she consumed wine some time between 7:30 and 8:30 p.m. and that she drove to her house and then to Spearfish around 8:30 or 8:40 p.m., the jury could have also found that Motzko had driven with a blood alcohol level closer to 0.072 percent than to 0.06 percent.

review, which requires us to determine if there is a *rational theory* that supports the jury's verdict. *Id.*

[¶13.] Ultimately, the evidence presented, including the favorable inferences drawn therefrom, provides a rational theory that supports the jury's verdict. Trooper Fox's detection of the odor of an alcohol beverage, Motzko's admission of wine consumption, and Dr. Looyenga's testimony presented a theory that Motzko drank a sufficient amount of wine to give her a 0.06 percent or higher blood alcohol level at the times she admitted she was driving. Furthermore, considering Dr. Looyenga's explanation of the effects of alcohol on Motzko's cognitive abilities at the 0.06 percent or higher blood alcohol levels, the jury could have concluded that Motzko was impaired at the times she was driving her motorcycle. Therefore, there is sufficient evidence to sustain the jury's verdict.

*Jury Affidavits*

[¶14.] Motzko's motion for new trial asserted that the jury misunderstood the law in arriving at its verdict. A jury's verdict may be set aside "in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law...." Atkins v. Stratmeyer, 1999 SD 131, ¶7, 600 NW2d 891, 894 (quoting LDL Cattle Co., Inc. v. Guetter, 1996 SD 22, ¶13, 544 NW2d 523, 526-27 (quoting Stoltz v. Stonecypher, 336 NW2d 654, 657 (SD 1983) (citing Simons v. Kidd, 73 SD 306, 42 NW2d 307, 309 (1950)))).

[¶15.] Motzko argues that a new trial should have been granted because of the minimal, observable evidence of impairment and the affidavits of seven jurors indicating that they were under a "mistaken belief" that Count IA (driving under

the influence) required them to find Motzko guilty if she had *any* amount of alcohol in her system. However, SDCL 19-14-7 (Rule 606(b)) prohibits consideration of juror affidavits explaining any matter or statement occurring during deliberations or anything that affected the juror's mind or emotions.[7] The statute only allows juror evidence regarding extraneous prejudicial information or outside influences that are improperly brought to the jury's attention.

[¶16.] We have provided examples of the difference between admissible extraneous and inadmissible intrinsic information.

> Intrinsic information, about which testimony is prohibited, involves "(1) the effect such extraneous information had upon their minds; (2) statement or discussions which took place during deliberations; or (3) evidence of 'intimidation or harassment of one juror by another, or other intra-jury influences.'". . . Extrinsic information may include "media publicity, conversations between jurors and non-jurors, and evidence not admitted by the court."

State v. Boyles, 1997 SD 99, ¶12, 567 NW2d 856, 859 (quoting State v. Wilkins, 536 NW2d 97, 99 (SD 1995)) (citations omitted). Additionally, once the jury has been

---

7. SDCL 19-14-7 provides:
> Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

discharged, a juror will not be allowed to testify in order "to impeach a jury verdict on grounds which inhere in the verdict itself." *Id.* ¶13. A jury's understanding of the "instructions and charge is a matter that inheres in the verdict." *Id.*

[¶17.]    In this case, the affidavits only attempted to impeach the verdict on grounds that inhere in the verdict itself. The affidavits reflected the juror's thoughts, discussions, and understanding of the jury instructions. Such testimony was inadmissible, intrinsic information. Because juror affidavits are not permitted on these subjects, the trial court correctly rejected them in reviewing the motion for new trial.

*Proposed Jury Instruction*

[¶18.]    Motzko argues that the trial court erred in rejecting her proposed jury instruction that stated:

> In South Dakota it is not illegal to drink and drive unless the consumption of alcohol is of a degree to render the driver under the influence of an alcoholic beverage as stated in the foregoing instruction.

[¶19.]    We review a trial court's decision to refuse a proposed jury instruction under the abuse of discretion standard. State v. Martin, 2004 SD 82, ¶21, 683 NW2d 399, 406. "Jury instructions are sufficient when, considered as a whole, they correctly state the applicable law and inform the jury." State v. Jemison, 1999 SD 29, ¶2, 590 NW2d 897, 897 (citations omitted). Thus, it is not error for a trial court to reject a proposed jury instruction when it merely amplifies a principle that was sufficiently conveyed in a given instruction. *Id.*

#23565

[¶20.]     In this case, the jury was instructed on the elements of the offense[8]

and the definition of "under the influence."[9]  Both instructions were correct,

accurate, and complete statements of the law.[10]  Motzko's proposed jury instruction

would have merely expanded, amplified, and commented upon those instructions.

Therefore, the refusal to give Motzko's proposed instruction was not an abuse of

discretion.

[¶21.]     Affirmed.

[¶22.]     GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶23.]     SABERS and MEIERHENRY, Justices, dissent.

---

8.     Jury Instruction 7:
       The elements of the crime of driving while under the influence,
       each of which the state must prove beyond a reasonable doubt,
       are that at the time and place alleged:
          1. The defendant drove or was in actual physical control of a
             vehicle.
          2. The defendant was under the influence of an alcoholic
             beverage.

9.     Jury Instruction 10:
       It is not essential to the existence of the offense that the driver
       of the vehicle should be so intoxicated that the vehicle cannot be
       safely driven.  The expression "under the influence of an
       alcoholic beverage" covers not only all well known and easily
       recognized conditions and degrees of intoxication, but any
       abnormal mental or physical condition which is the result of
       indulging in any degree in an alcoholic beverage and which
       tends to deprive the driver of that clearness of intellect and
       control of oneself which the driver would otherwise possess.

10.    The jury could not have been confused.  The jury specifically asked the trial
       court whether the defendant could be found not guilty on both counts.  The
       trial court responded, "Yes."

-11-

#23565

SABERS, Justice (dissenting).

[¶24.]    I dissent.

[¶25.]    The State had the burden to prove beyond a reasonable doubt every element of the crime charged. In this case, the defendant was sitting on her motorcycle, stopped at a stop sign, when her motorcycle was struck from behind, through no fault of her own.

[¶26.]    The State claims that Motzko had an abnormal mental and physical condition depriving her of the clearness of intellect and self control she normally possessed. There is no showing that Motzko had an abnormal mental or physical condition. There is also no showing that Motzko was deprived of the clearness of intellect and self control she normally possessed. Therefore, the State failed to put forward adequate evidence supporting its claim. Even though the evidence and inferences are to be viewed in the light most favorable to the verdict, we should not lose sight of our duty to determine whether the evidence was "*sufficient to sustain a finding of guilt beyond a reasonable doubt.*" ¶6 *supra*. When, as in the present case, the evidence falls short of that standard, we should not hesitate to reverse.[11]

[¶27.]    In addition, under the circumstances of this case, I submit it was error for the trial court to refuse her proposed jury instruction which provided:

> In South Dakota it is not illegal to drink and drive unless the consumption of alcohol is of a degree to render the driver under the influence of an alcoholic beverage as stated in the foregoing instruction.

---

11.    Otherwise, a defendant's right to appeal is reduced to the right to receive an appellate rubber stamp of the trial court's rulings.

[¶28.]	This is a correct statement of the law in South Dakota and the jury should have been so instructed under the circumstances of this case.

[¶29.]	MEIERHENRY, Justice, joins this dissent.